**STATE BANK OF ALBANY**

v.

**The UNITED STATES.**

No. 212–72.

United States Court of Claims.

Feb. 18, 1976.

Durfee, Senior Judge, dissented and filed an opinion.

Richard A. Langer, Albany, N. Y., for plaintiff. Earl H. Gallup, Jr., Albany, N. Y., atty. of record.

Kenneth R. Boiarsky, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Theodore D. Peyser, Jr., and Donald H. Olson, Washington, D. C., of counsel.

Before DURFEE, Senior Judge, and NICHOLS and KASHIWA, Judges.

NICHOLS, Judge.

Plaintiff, State Bank of Albany, brings this action to recover Federal income taxes of $151,021.73 and $417,-845.86, for the years 1961 and 1963, respectively, plus statutory interest. In its original petition, plaintiff sought to recover $188,503.77 plus interest, representing Federal income taxes paid for 1962; however, in reply to defendant's

cross motion for summary judgment, plaintiff conceded that it is barred from relitigating the taxable year 1962 and we do not now consider that issue. We have jurisdiction pursuant to 28 U.S.C. § 1491. We hold for the plaintiff for the reasons discussed below. The disputed issue is the meaning of the word "Government" in a Treasury pronouncement. The material facts have been jointly stipulated.

## I.

Plaintiff, State Bank of Albany, is a trust company organized and existing under the laws of the State of New York. Plaintiff files its Federal income tax returns using the calendar year reporting period and the accrual method of accounting. It computes its bad debt deductions on the reserve method, for which an appropriate election was made in its 1947 income tax return in accordance with Mim. 6209, 1947–2 Cum.Bull. 26 (hereinafter referred to as Mim. 6209).

Plaintiff timely filed its corporate income tax return for the year 1961. Following an examination, the Internal Revenue Service (IRS) disallowed the inclusion in the loan base (that is, the total outstanding loans less loans which are excluded therefrom for purposes of computing the bad debt reserve) for calculation of the allowable addition to the reserve for bad debts, of $11,001,000 worth of certain short term notes of the State of New York. The IRS assessed additional taxes in the amount of $166,723.81 which plaintiff paid, plus interest, on April 1, 1964. Plaintiff filed a claim for refund of $151,021.73 on March 29, 1966, which was formally disallowed on May 27, 1970.

On March 18, 1964, plaintiff timely filed its income tax return for 1963. Plaintiff did not include certain short term notes of New York State in the loan base for calculation of the allowable addition to the bad debt reserve; however, on March 15, 1967, plaintiff filed a claim for a $417,845.86 refund asserting the propriety of the inclusion thereof of these notes. Plaintiff's claim was formally disallowed on May 27, 1970.

The notes involved in this case are of three types:

*Type*

A  State Guaranteed Bond Anticipation Notes of the New York Job Development Authority

B  State of New York Housing Bond Anticipation Notes

C  State of New York Tax Anticipation Notes

Type A notes are fully and unconditionally guaranteed by New York State, both as to principal and interest. Types B and C are direct obligations on New York State with the full faith and credit of the State pledged as to both principal and interest. None of the notes were guaranteed by the Federal Government.

The following schedule summarizes (according to type, interest rate, issuance date, maturity date, and amount) the short-term notes of New York State held by plaintiff at the end of the 1961 and 1963 years in issue:

| Type | Interest Rate (%) | Issuance Date | Maturity Date | Amount |
|---|---|---|---|---|
| *1961* | | | | |
| B | 1. 75 | 1/ 9/61 | 1/ 9/62 | $603, 000 |
| B | 1. 60 | 2/13/61 | 2/13/62 | 3, 000, 000 |
| B | 1. 60 | 7/14/61 | 7/13/62 | 1, 300, 000 |
| B | 1. 625 | 8/11/61 | 8/10/62 | 2, 951, 000 |
| B | 1. 625 | 8/18/61 | 8/17/62 | 847, 000 |
| C | 1. 60 | 9/15/61 | 3/15/62 | 2, 300, 000 |
| | | | Total | $11, 001, 000 |
| *1963* | | | | |
| A | 1. 625 | 1/17/63 | 1/17/64 | 1, 500, 000 |
| A | 2. 00 | 11/18/63 | 11/18/64 | 1, 500, 000 |
| B | 1. 75 | 7/15/63 | 3/ 2/64 | 32, 000 |

| Type | Interest Rate (%) | Issuance Date | Maturity Date | Amount |
|------|------|------|------|------|
| *1963* | | | | |
| B | 1. 60 | 3/15/63 | 3/13/64 | 751, 000 |
| B | 1. 625 | 6/14/63 | 6/12/64 | 11, 292, 000 |
| B | 1. 75 | 7/12/63 | 7/10/64 | 5, 958, 000 |
| B | 1. 95 | 9/13/63 | 9/11/64 | 705, 000 |
| B | 1. 95 | 9/13/63 | 9/11/64 | 1, 619, 000 |
| B | 2. 00 | 11/15/63 | 11/13/64 | 1, 800, 000 |
| C | 1. 85 | 8/ 1/63 | 3/31/64 | 8, 600, 000 |
| C | 1. 70 | 4/15/63 | 3/31/64 | 20, 000, 000 |
| | | | Total | $53, 757, 000 |

## II.

The issue before this court is whether the short term notes described above should be included in plaintiff's loan base for purposes of computing its bad debt deduction under the reserve method. Essentially, the question is whether the short term notes are "Government insured loans" as contemplated by Mim. 6209. If so, plaintiff cannot include them in its loan base.

The starting point in analyzing the problem is the statute. Section 166(a) of the Internal Revenue Code of 1954, 26 U.S.C. Sec. 166(a), allows a deduction for debts which have become worthless during the taxable year. In lieu of any deduction under Sec. 166(a), a taxpayer may utilize Sec. 166(c) pertinent here, which provides:

* * * there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

In 1947, the IRS published Mim. 6209. It is well established that Mim. 6209 is the Commissioner's exercise of discretion authorized by Sec. 166(c). While it does not have the force and effect of law or regulation, it is a rule of general application binding on the Commissioner and the taxpayer. *North Carolina Nat'l Bank v. United States*, 345 F.2d 544, 170 Ct.Cl. 765 (1965). As decided in that case, the promulgation of Mim. 6209 and a taxpayer's timely election to follow it brings into effect something analogous to a binding contract. Mim. 6209 contained a formula to be used by banks, including trust companies, at their election, to determine a reasonable addition to the reserve for bad debts. Paragraph 4 of Mim. 6209 says:

In computing the moving average percentage of actual bad debt losses to loans, the average should be computed on loans comparable in their nature and risk involved to those outstanding at the close of the current taxable year involved. Government insured loans should be eliminated from prior year accounts in computing percentages of past losses, also from the current year loans in computing allowable deductions for additions to the reserve. * * * (Emphasis supplied).

Mim. 6209 does not define the phrase "Government insured loans."

Rev.Rul. 54–148, 1954–1 Cum.Bull. 60 supplemented Mim. 6209 by allowing a bank a reasonable addition to its reserve for bad debts using an average experience factor based on any 20 consecutive years of experience after 1927, in lieu of a moving average experience factor determined on a basis of 20 years including the taxable year. Although the ruling specifically states that the provisions of Mim. 6209 have been carefully re-examined, (Sec. 2), it does not provide any explanation of the phrase "Government insured loans." Rev.Rul. 65–92, 1965–1 Cum.Bull. 112, superseded Mim. 6209 and Rev.Rul. 54–148 for tax years ending after December 31, 1964, and admittedly is not applicable herein.

Plaintiff contends that the notes in question are not "Government insured loans" under Mim. 6209. Plaintiff urges us to interpret "Government" in its "everyday ordinary sense," that is, according to plaintiff, meaning Federal Government and not state or local

government. Defendant, however, relying on Rev.Rul. 68–630, 1968–2 Cum. Bull. 84, contends that the Mim. 6209 exclusion of "Government insured loans" encompasses state notes.

Rev.Rul. 68–630 was issued in 1968 to clarify certain questions regarding the eligibility of items for inclusion in the loan base by banks. Section 6 defines "Government" as referring to the Federal Government and its instrumentalities, the District of Columbia, United States territories and possessions and State governments and political subdivisions thereof. Defendant says that the issue is whether the Commissioner's exercise of discretion in Rev.Rul. 68–630 was reasonable. This does not reach the real question, that is, whether the notes are "Government insured" *under Mim. 6209.* Rev.Rul. 68–630 should not be applied retroactively to the taxable years 1961 and 1963. Although Section 10 of the ruling says that the Ruling should "normally be applied to all open taxable years," Section 6 specifically interprets "Government" as it is used in Revenue Rulings 65–92; 58–259, 1958–1 Cum.Bull. 116; 57–509, 1957–2 Cum.Bull. 145; 57–210, 1957–1 Cum.Bull. 94. The only Ruling among these related to the problem is Rev.Rul. 65–92 which *superseded* Mim. 6209 for taxable years ending after December 31, 1964. Thus the Revenue Ruling does not, by its own language, apply to plaintiff's taxable years 1961 and 1963. Defendant, moreover, cannot by Revenue Ruling retroactively change the meaning of a term used much earlier in Mim. 6209 and thereby vary its agreement with the taxpayer.

Judge Skelton of this court, sitting by designation with the Fifth Circuit, made short work of a Revenue Ruling he deemed unreasonable in *Stubbs Overbeck & Assoc. v. United States,* 445 F.2d 1142, 1146–47 (5 Cir. 1971), observing:

> * * * A ruling is merely the opinion of a lawyer in the agency and must be accepted as such. It may be helpful in interpreting a statute, but it is not binding on * * * the courts. * * *

There is not any explicit legislative or regulatory gloss which will aid us in defining "Government" as used in Mim. 6209. As a general rule, words in a statute are to be given their usual, natural, plain ordinary and commonly understood meaning. *Crane v. Commissioner,* 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947); *Old Colony R.R. Co. v. Commissioner,* 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484 (1932). *See also,* 82 C.J.S. *Statutes* § 329(b) (1953). This rule of interpretation should be applied with equal force to Mim. 6209. As the Supreme Court said in *Lynch v. Alworth Stephans Co.,* 267 U.S. 364, 370, 45 S.Ct. 274, 276, 69 L.Ed. 660, 662 (1925): "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense. * * * *"* Plaintiff in 1961 and 1963 did not have the guidance of Rev.Rul. 68–630. It elected to use Mim. 6209 and interpreted "Government insured loans" in a sense that seemed rational to it.

Some of us may deplore the way the Government at Washington is, in the semantics of many, all in all, and those in Albany and other state capitols, mere puppets. But we cannot ignore common speech in construing our laws. In Webster's Third New International Dictionary, Unabridged, one of the meanings stated for Government is as follows: "8 * * * b. usu cap the executive branch of the U.S. federal government, including the political officials and usu the permanent civil service." By the same authority, a Government security is an issuance by the Federal Government. In *North Carolina Nat'l Bank, supra,* 345 F.2d 544, 170 Ct.Cl. 765, at 776, we used "Government" in midsentence with a capital "G" to refer to the involved exclusion in Mim. 6209. Unfortunately, the use of the initial capital, referred to by Webster as denoting Federal Government, is here not helpful as in Mim. 6209 "Government" is the first word of a sentence. However, for what it is worth, we note that *The Wall Street Journal,* December 16, 1975 at page 35, lists the following under the caption of:

"Government Securities": Treasury. Bonds and Notes; U.S. Treasury Bills; Federal Home Loan Bank; World Bank Bonds; Bank for Co-ops; Inter-American Development Bank; GNMA Issues; Postal Service; FNMA Issues; Federal Land Bank; and FIC Bank Debentures. All of the above are United States. Government securities; there is no mention made of any state or municipal bonds or notes, a further indication that a commonly understood interpretation of "Government" in the business community at least, would be "Federal Government." Mim. 6209 applied to Federal tax returns and was administered by a Federal agency. An IRS draftsman might well overlook that other governments existed.

■ By analogy, a rule of contract interpretation will also aid us in reaching our result. Where a provision in a contract is susceptible of more than one reasonable interpretation, the rule of *contra proferentem* dictates that any ambiguity in the contract must be resolved against the drafter of the contract. *Kenneth Reed Const. Corp. v. United States*, 475 F.2d 583, 201 Ct.Cl. 282 (1973); *Chris Berg, Inc. v. United States*, 455 F.2d 1037, 197 Ct.Cl. 503 (1972). Mim. 6209 was drafted by the IRS, to be used only at a taxpayer's election, and its effect is as stated above. The analogy of such a pronouncement to a contract of adhesion is much closer than would be the case with any IRS statement meant to be otherwise used. In 1961, plaintiff's interpretation of "Government insured loans" to mean Federal Government was a reasonable reading of the Mimeo. Defendant's use of the phrase, without any clarifying language by 1961, created what was at best for it an ambiguity which should be construed against the drafter.

Defendant urges that the Commissioner's decision to exclude New York State short-term notes from the loan base was reasonable since these notes involve "no reasonable risk of loss." Even though being reasonable, he could not vary his agreement. *North Carolina Bank, supra,* Plaintiff further refutes this argument in distinguishing between loans insured or guaranteed by the United States Government and those insured or guaranteed by state or local governments. Loans insured or guaranteed by the United States Government are backed by the full faith and credit of the Federal Government. When the Federal Government finds its debt obligations onerous, it can manage them by managing the currency. States cannot do this. Federal loans cannot go bad unless the country collapses and therefore it would not be reasonable to establish a bad debt reserve for them for Federal tax purposes. Mim. 6209's exclusion of "Government insured loans" was therefore sensibly designed so as to exclude United States Government insured loans from the loan base. The difference respecting state obligations is one of kind as well as degree. State and local bonds do not have the same degree of certainty. There is a varying element of risk associated with these bonds which cannot be overlooked. The IRS Commissioner could not in 1947 or any other time have certified that they were all free from risk. To assume that investors would consider all governmental notes, Federal, state or local, of equal risk or absence of risk is to ignore the realities of the financial world. Defendant's argument is without merit.

■ In conclusion, the court determines that "Government insured loans" as used in Mim. 6209 applied to Federal Government loans only. Plaintiff should have been allowed to include the short-term notes at issue in its loan base for calculating the allowable addition to its reserve for bad debts for the taxable years 1961 and 1963. Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross motion for summary judgment is denied. Plaintiff is entitled to recover $151,021.73 plus interest, less an offset in the amount of $1,128.59 in tax and $57.91 in interest (which amounts, according to the parties stipulations, were erroneously refunded to plaintiff on February 17, 1965) for the taxable year 1961, and $417,845.86 plus interest for the taxpayer year 1963.

DURFEE, Senior Judge (dissenting):

I agree that the real question is not whether the Commissioner's exercise of discretion in Rev.Rul. 68–630 issued in 1968 was reasonable, and that it should not be applied retroactively to the taxable years 1961 and 1963. However, to say that "the real question * * * is, whether the notes are 'Government insured' *under Mim. 6209* " does not thereby eliminate our required standard of review in section 166 bad debt reserve cases as stated in *Kirtz v. United States,* 304 F.2d 460, 464, 157 Ct.Cl. 824, 832 (1962):

> Since by the terms of the statute the taxpayer is allowed to deduct its actual bad debts as a matter of right, but an addition to a reserve for estimated bad debts "in the discretion of the Secretary or his delegate" *the issue is whether the exercise of discretion by the Commissioner of Internal Revenue was reasonable. * * ** [Emphasis added].

Even accepting as reasonable plaintiff's interpretation of the term "Government insured loans" to mean Federal Government loans is not enough to entitle plaintiff to prevail in this case.

> * * * It does not follow that if the plaintiff was reasonable in its determination the defendant was unreasonable. The burden is on the plaintiff to show that the Commissioner was unreasonable, and absent this showing we will not assume that there has been an abuse of discretion. * * * *Kirtz v. United States, supra,* 304 F.2d at 464, 157 Ct.Cl. at 832.

I can find nothing to show that the Commissioner abused his discretion in applying the prohibition against the inclusion of "Government insured loans" in a taxpayer's loan base to plaintiff's inclusion of its 1961 and 1963 New York State loans in its loan base in those years for computation of its bad debt reserve deduction.

Plaintiff has produced no evidence showing any history of loan default on the part of New York State or its agencies, or that such loans contained any greater element of risk than Federal loans.

Unconvinced that the Commissioner abused his discretion in this case, I would grant defendant's cross-motion for summary judgment.