**MASSACHUSETTS CREDIT UNION SHARE INSURANCE CORPORATION, Plaintiff,**

v.

**NATIONAL CREDIT UNION ADMINISTRATION, et al., Defendants.**

**Civ. A. No. 87–0800.**

United States District Court, District of Columbia.

Aug. 1, 1988.

---

Stephen A. Fennell, Washington, D.C., for plaintiff.

Karen Stewart, Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

## OPINION

JOHN GARRETT PENN, District Judge.

The Massachusetts Credit Union Share Insurance Corporation, (hereafter MSIC), brought this action for declaratory and injunctive relief from the effect of a rulemaking procedure by the Board of the National Credit Union Administration, (NCUA), an independent agency of the United States organized within the Executive branch. It asserts that NCUA has violated the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and exceeded the authority delegated to it by the Congress under the Federal Credit Union Act, 12 U.S.C. § 1751 et seq., by promulgating a rule requiring the credit unions which it insures to post signs and utilize advertising statements indicating that deposits in such credit union accounts are "federally insured". MSIC maintains that deposits in such credit unions are insured by NCUA only to the extent of that agency's capitalization supplemented by certain loan mechanisms authorized by the Congress. Therefore, plaintiff contends that the NCUA insurance program is not guaranteed by the full faith and credit of the United States and that NCUA's use of the term "federally insured" is misleading and will prompt state-chartered credit unions to replace their current MSIC deposit insurance with the alternate protection offered by NCUA. This matter comes before the Court on defendants' motion for judgment on the pleadings or in the alternative,

summary judgment. The Court concludes for the reasons set out below that the plaintiff lacks standing to bring this action. Even were the Court to assume that the plaintiff has standing, the defendants would be entitled to judgment on the merits of the claim.

## I.

The Massachusetts Credit Union Share Insurance Corporation was chartered by the Massachusetts Legislature in 1961 in order to provide insurance for deposits in credit unions engaged in banking operations in that commonwealth. It operates on the cooperative principle and is owned collectively by the institutions which it insures. It currently provides share and deposit insurance for nearly two hundred state-chartered credit unions and also provides insurance for deposits in excess of the $100,000 NCUA statutory limit held by thirty-one state-chartered credit unions and seven federal credit unions in Massachusetts.

The National Credit Union Administration was established by the Congress in 1970 to regulate and insure all federal credit unions and to insure state-chartered credit unions that apply and qualify for participation in the National Credit Union Share Insurance Fund. 12 U.S.C. § 1781. Under Massachusetts law, all credit unions operating in the Commonwealth are required to insure deposits through either NCUA or MSIC. Mass.Gen.L. ch. 171, § 34. In light of the mandatory choice between its services and those provided by NCUA, MSIC views itself as being in direct competition with NCUA.

At issue in this action are advertising regulations issued by NCUA under the authority of the National Credit Union Act.[1] In a Notice of Proposed Rulemaking published on May 6, 1986, 50 Fed.Reg. 16710,

NCUA proposed changes in both the advertising statement and the official sign in order to promote "public awareness and recognition" of NCUA as a federal entity providing protection for credit union members' savings. The Notice also contained a statement, at 16711, that the NCUA Board was considering changing the phrase on the official sign from "your savings insured to $100,000" to "your savings *federally* insured to $100,000", in order to aid the public in understanding the nature of the protection afforded by the share insurance program. The Notice invited comment on or before May 30, 1986.

The president of MSIC submitted comments on an unrelated section of the proposed rule on June 17, 1986, but did not make reference to the proposed alterations in the sign or statement. On October 23, 1986, NCUA issued the final rule, 51 Fed Reg. 37549, which indicated that the phrase "your savings federally insured to $100,000" would become part of the sign. It noted that all comments received by NCUA concerning this provision were positive. 51 Fed.Reg. 37550. On November 25, 1986, MSIC petitioned NCUA to amend the final rule so as to remove the disputed phrase. The petition was denied on December 9, and the rule became effective on December 22, 1986. 12 C.F.R. § 740.4. Plaintiff thereafter initiated this action alleging that use of the phrase "federally insured" violates NCUA regulations proscribing advertising which is inaccurate or misrepresentative and exceeds the authority granted to the NCUA Board under the enabling legislation. MSIC further maintains that the denial by the NCUA Board to amend the rule is arbitrary and capricious action by the agency. Defendant NCUA challenges MSIC's standing to litigate.

## II.

When a litigants' standing is challenged, as it is here, it has become almost

---

1. 12 U.S.C. § 1785 provides:
   Every insured credit union shall display at each place of business maintained by it a sign or signs indicating that its member accounts are insured by the Board and shall include in all of its advertisements a statement to the effect that its members accounts are insured by the Board. The Board may exempt from

   this requirement advertisements which do not relate to member accounts or advertisements in which it is impractical to include such a statement. The Board shall prescribe by regulation the forms of such signs, the manner of display, the substance of any such statement, and the manner of use.

reflexive to note that the jurisdiction of federal courts is limited, under Article III of the Constitution, to "cases" and "controversies". The recent decisions of the Supreme Court concerning the issue of standing demonstrate that, "at an irreducible minimum", Article III requires a party who invokes the court's authority to "show that he has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant". *Diamond v. Charles*, 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). The injury must be such that it "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision". *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976). Moreover, a party seeking review must allege facts showing that it has itself been adversely affected; a mere interest in the problem, "no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA". *Sierra Club v. Morton*, 405 U.S. 727, 740, 741, 92 S.Ct. 1361, 1368, 1369, 31 L.Ed.2d 636 (1972).

Thus, the threshold question is whether MSIC's complaint has sufficiently alleged an "injury in fact" so as to invoke the federal judicial power. MSIC maintains in its complaint that the regulation in question will result in three distinct sources of economic injury. First, it alleges that the appearance of the phrase "your savings federally insured" will have a "natural tendency" to prompt MSIC-insured credit unions to withdraw from MSIC and elect coverage under the NCUA program. Second, it posits that the alleged misrepresentation that NCUA insurance is backed by the full faith and credit of the United States will cause depositors to withdraw their savings from MSIC-insured credit unions and deposit them in NCUA-insured institutions. Finally, for much the same rationale, it contends that future new depositors will elect to become members of NCUA-insured credit unions rather than MSIC-insured institutions. The sole issue for determination is whether these grievances constitute an "injury in fact" capable of rendering the action justiciable.

In this regard, the Supreme Court has held it is not necessary to prove a grave injury in order to sustain a challenge to standing to litigate; a minor but identifiable harm will suffice. *United States v. Students Challenging Regulatory Agency Procedure (SCRAP)*, 412 U.S. 669, 689, n. 14, 93 S.Ct. 2405, 2417, n. 14, 37 L.Ed.2d 254 (1973). Still, pleadings must be "something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." The injury must not only be perceptible, concrete and distinct, *Id.* 93 S.Ct. at 2416, but real and immediate rather than conjectural and hypothetical. *California Bankers Associations v. Shultz*, 416 U.S. 21, 69, 94 S.Ct. 1494, 1521, 39 L.Ed.2d 812 (1974) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 493–494, 94 S.Ct. 669, 695, 38 L.Ed.2d 674 (1974).

The complaint here merely alleges that the "natural tendency" of MSIC-insured credit unions would be to insure their depositors' accounts with NCUA only if they believed that such insurance was backed by the full faith and credit of the United States. One implication of this allegation is that if the NCUA rule regarding the official sign and advertising statement is invalidated, credit unions in Massachusetts will regard the two programs as equivalent competitors and select deposit insurance upon grounds other than the extent of the federal government's financial support of the NCUA program. Another may be that absent the NCUA sign and advertising statement, these institutions will tend to

opt for MSIC insurance. The fact that at least some state-chartered credit unions in Massachusetts had, before the promulgation of the NCUA rule, elected to insure their deposits with NCUA rather than MSIC, demonstrates not only the speculative nature of the allegations, but necessarily compels the conclusion that these same institutions made the election without regard to the regulation in question.[2]

In this regard, the Court notes that MSIC's president has stated that thirty-seven credit unions left MSIC in 1985 and that this event endangered the continued vitality of the corporation. Affidavit of Robert Maietta, 4, attached as Exhibit B to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, filed October 20, 1987, (hereafter Plaintiff's Opposition). Nonetheless, the Court also notes that MSIC has not alleged that *any* of its members have left MSIC as a consequence of the NCUA rule, nor has MSIC alleged that any of its members have dropped MSIC coverage since the rule took effect for any cause. Instead, MSIC has submitted the affidavit of the manager of a state-chartered credit union which has carried MSIC insurance since 1963 which relates that the manager has "become more attuned" to seeking NCUA protection. In addition, the manager states that he has "seriously considered" the possibility of securing federal deposit protection and would "most likely" do so in the event of a destabilizing financial event. Affidavit of Robert W. Carlson, 2, attached as Exhibit C to Plaintiff's Opposition.

Standing alone, these assertions are insufficient to justify the plaintiff's standing. "Where there is no current injury, and a party relies wholly on the threat of future injury, the fact that the party (and the court) can 'imagine circumstances in which [the party] *could* be affected by the agency's action is not enough.'" *Northwest*

*Airlines, Inc., v. Federal Aviation Administration,* 795 F.2d 195, 201 (D.C.Cir.1986) (quoting *SCRAP, supra,* 412 U.S. at 688–89, 93 S.Ct. at 2416–17) (emphasis in original). "A plaintiff or petitioner 'must demonstrate a realistic danger of sustaining a direct injury.... [o]ne does not have to await the consummation of threatened injury. If the injury is *certainly impending* that is enough.'" *Northwest Airlines,* 795 F.2d at 201, *quoting, Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (emphasis in original). Here however, the parties have not alleged such facts as would be necessary to demonstrate that a future injury is certainly impending. Moreover, the passage of a significant amount of time since the adoption of the rule during which no injury appears to have been sustained indicates the plaintiff is unable to make such a claim.

Similarly, the claims that current depositors at MSIC-insured institutions will withdraw their savings in order to deposit them in a NCUA-insured account and that future depositors may make an initial election to deposit in a NCUA-insured credit union rather than an institution protected by private insurance demonstrates that the assumed injury is *not* directly traceable to the allegedly illegal conduct of NCUA. It is axiomatic that a federal court may only apply the judicial power of the United States to relieve an injury that can be "fairly traced" to the actions of the defendant agency and not to redress an injury that results from the independent action of some party not before the court. *Simon,* 426 U.S. at 41–42, 96 S.Ct. at 1926. When a plaintiff's allegations belie the presence of an independent variable between either the harm and the relief or the harm and the conduct, it renders causation sufficiently tenuous that standing should be denied.

---

**2.** MSIC cites *Clarke v. Securities Industries Association,* 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) and *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), for the proposition that a party within the zone of interests protected by the Act which sustains an injury related to agency action favoring a competitor will have standing to contest the allegedly illegal acts of the agency. However, the fact of competition itself will not suffice to justify Article III standing; there must be an element of injury in fact. *See e.g., National Coal Ass'n v. Hodel,* 825 F.2d 523, 526 (D.C.Cir. 1987).

*Northwest Airlines,* 795 F.2d at 204; *Mideast Systems and China Civil Construction Saipan Joint Venture v. Hodel,* 792 F.2d 1172, 1176–77 (D.C.Cir.1986). "The facts alleged must show that the agency is at least a substantial factor motivating the third parties action" against the plaintiff. *Community for Creative Non–Violence v. Pierce,* 814 F.2d 663 (D.C.Cir.1987).

Thus, it is not enough for MSIC to ascribe to the state-chartered credit unions it insures a "natural tendency" to drop its services, nor may it rely upon the assertions of individual credit union officials that they have "seriously considered" taking such action, and "most likely" would do so upon the happening of some undefined eventuality. It would have been necessary, in this context, that MSIC plead that it had sustained some particularized injury, such as the withdrawal of member institutions from the share insurance fund, which could be traced to the rule requiring credit unions to advertise that they were federally insured. Having failed to do so, plaintiff's claim of standing to litigate must fail as well.

## III.

■ Even assuming MSIC had satisfied the criteria for standing, it would still need to demonstrate the basis of its underlying claim, that is, that the NCUA Share Insurance Fund is not backed by the full faith and credit of the United States and there-

fore, use of the term "federally insured" misrepresents the character of the NCUA deposit insurance program.

An examination of the relevant statutes points out the weakness of this assertion. On August 10, 1987, the president approved the Competitive Equality Banking Act of 1987, Pub.L. No. 100–86, 101 Stat. 552, the provisions of which are relevant to the present inquiry.[3] In particular, Title IX of the Act reaffirms that deposits in federally insured depository institutions are backed by the full faith and credit of the United States up to the prescribed statutory limits.[4]

Plaintiff raises two objections to the claim that the provisions of the Act are dispositive of this suit. First, it argues that the language Congress chose to include in the statute is precatory and amounts to no more than the nonbinding opinion of the 100th Congress that the full faith and credit of the United States *should* stand behind federal depository insurance. Next, it contends that inasmuch as Congress has not heretofore appropriated funds to meet any obligations which may arise in the event the Share Insurance Fund is depleted, NCUA cannot obligate the United States to indemnify member accounts in light of the provisions of the Anti–Deficiency Act, 31 U.S.C. § 1341.[5]

Plaintiff seeks to support its first argument by comparing the language of § 901 with the virtually identical passages con-

---

3. Although the Act was approved following the initiation of this action, both parties are acutely aware of its provisions and have addressed the applicability of the Act to the case before the Court.

4. Section 901 of the Act provides:
   **REAFFIRMATION OF SECURITY OF FUNDS DEPOSITED IN FEDERALLY INSURED DEPOSITORY INSTITUTIONS.**
   (a) Findings.—The Congress finds and declares that—
   (1) since the 1930's, the American people have relied upon Federal deposit insurance to ensure the safety and security of their funds in federally insured depository institutions; and
   (2) the safety and security of such funds is an essential element of the American financial system.
   (b) Sense of the Congress.—In view of the findings and declarations contained in subsec-

tion (a), it is the sense of the Congress that it should reaffirm that deposits up to the statutorily prescribed amount are backed by the full faith and credit of the United States.

5. Section 1341 provides in relevant part:
   **Limitations on expending and obligating amounts**
   (a)(1) An officer or employee of the United States Government or of the District of Columbia government may not—
   (A) make or authorize an *expenditure or obligation* exceeding an amount available in an appropriation or fund for the expenditure or obligation; or
   (B) involve either government in a contract or obligation for the payment of money before an appropriations is made unless authorized by law.

tained in House Concurrent Resolution 290, 97th Cong.2d Sess. (1982),[6] and by noting that although Concurrent Resolution 290 contained no hortatory language, it was not signed into law. The effort is unavailing on two counts. First a concurrent resolution, is, by its very nature a nonbinding expression of the sense of both houses of the Congress. Because concurrent resolutions cannot become law, they are not presented to the White House for approval. *See*, Procedural Steps in the Legislative Process, Sen.Doc. 20, 97th Cong.2d Sess. 8. By contrast, a House or Senate bill which is approved in each chamber and signed by the President becomes a public law affecting the nation as a whole. Thus, there is no significance in the fact that H.Con.Res. 290 was not presented to the President.

Second, while nonbinding provisions are sometimes included in public laws as an expression of the intent of the Congress in enacting comprehensive legislation, Title IX of the Act is not such a provision. By its plain usage, § 901 states that it is the sense of the Congress that it *should reaffirm* that deposits are backed by the full faith and credit of the United States. Plaintiff instead interprets the section to state that it is the sense of the Congress that it *should back* deposit insurance with the full faith and credit of the United States. This interpretation finds no support in either the relevant committee reports or in the floor debates of the measures in question.[7] On the contrary, be-

cause the language of the legislation is clear and unambiguous, the duty of the judiciary is likewise clear. The Court must follow that language and give it effect. *Wisconsin Electric Power Company v. Department of Energy*, 778 F.2d 1, 4 (D.C. Cir.1985). "As the Supreme Court has instructed us in terms that could scarcely be plainer, when we have before us language crafted by the Article I branch, '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive'." *Id.*, citing *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The Court concludes that it was the clear and unambiguous intention of the Congress to guarantee the resources of federal depository institutions with the full faith and credit of the United States. Having explicitly done so, it need not either authorize or appropriate funds for this purpose until it deems it necessary. *State Bank of Albany v. United States*, 530 F.2d 1379, 1383, 209 Ct.Cl. 13 (1976).

In conclusion, MSIC has neither demonstrated an injury in fact that can be traced to NCUA, nor has it shown that the injury it alleges will be redressed by the relief it seeks from this court. In order to satisfy these aspects of the standing requirements, something more is necessary than to allege that the withdrawal of the NCUA rule will make a difference because it will remove one influence possibly motivating third par-

6. H.Con.Res. 290 provided:

   Whereas since the 1930's, the American people have relied upon Federal deposit insurance to ensure the safety and security of their funds in federally insured depository institutions; and
   Whereas the safety and security of such funds is an essential element of the American financial system: Now therefore be it Resolved by *the House of Representatives (the Senate concurring)*, That the Congress reaffirms that deposits, up to the statutorily prescribed amount are backed by the full faith and credit of the United States.

7. *See especially,* H.R.Rep. 62, 100th Cong. 1st Sess., 57. "Section 305.—Reaffirms that deposits up to the statutorily prescribed amount, in federally insured depository institutions, are backed by the full faith and credit of the United

States." *See also,* H.R.Rep. 261, 100th Cong. 1st Sess., 188, U.S.Code Cong. & Admin.News 1987, 489, the conference report which accompanied the Act.

The Senate floor debate on the earlier concurrent resolution is also enlightening, particularly the remarks by Senator Proxmire:

   There should be no question that the Treasury Department guarantees every last nickel of every insured deposit. Every insured depositor will be paid 100 cents on the dollar on every insured deposit because the U.S. Government stands behind these insurance agencies completely.
   Lest there be any doubt on that score, this resolution makes it clear that the full faith and credit of the Federal Government stands behind *every* insured deposit at *every* insured financial institution.
   128 Cong.Rec. S2618 (daily ed. March 23, 1982).

ties injurious actions. *CCNV*, 814 F.2d at 669, (citing *Greater Tampa Chamber of Commerce v. Goldschmidt*, 627 F.2d 258, 264–65 (D.C.Cir.1980). As a necessary consequence, MSIC's standing to litigate must fail and the case must be dismissed. Moreover, the defendants would be entitled to summary judgment on the merits even if plaintiff could demonstrate a basis for standing.

An appropriate order accompanies this opinion.

### ORDER

This case is before the Court on the defendants' motion for judgment on the pleadings, or in the alternative, summary judgment. Upon consideration of the motion, the opposition, and the record in this case, the Court concludes for the reasons set forth in the accompanying memorandum that the plaintiff lacks standing to litigate and judgment on the pleadings must be granted.

In view of the foregoing, it is hereby

ORDERED that defendants' motion for judgment on the pleadings be granted; and it is further

ORDERED that this case be dismissed.