**John T. ZERVAS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–3964C.

United States Claims Court.

Oct. 21, 1992.

John T. Zervas, pro se.

Kathryn A. Bleecker, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and Mary Mitchelson, Deputy Director, Washington, D.C., for defendant.

### ORDER

ANDEWELT, Judge.

In this civilian back pay action, plaintiff, John T. Zervas, appearing *pro se*, seeks grade and pay retention benefits defendant allegedly owes him pursuant to 5 U.S.C. §§ 5362 and 5363, and a living quarters allowance (LQA). This action is presently before the court on defendant's motion to

dismiss plaintiff's back pay claim for grade and pay retention benefits on the ground of lack of subject matter jurisdiction. For the reasons set forth below, defendant's motion is denied.[1]

### I.

Plaintiff was employed by the United States Air Force (Air Force) at the Rhein–Main Air Base in West Germany at a GS–12, step 7, level. In July 1984, the Air Force notified plaintiff of a pending reduction in force (RIF) and offered plaintiff a different position with the Air Force at a GS–9 level, with retained grade and pay benefits as a GS–12, Step 7. Plaintiff declined this offer and, thereafter, accepted involuntary discontinued service retirement in lieu of a RIF termination. Plaintiff was separated from the Air Force on October 4, 1984. After separation, plaintiff applied for, and was enrolled in, the Placement Priority Program for positions at GS–10 through GS–12 grade levels.

Approximately six months later, in April 1985, the United States Army (Army) hired plaintiff for a position classified at the GS–9, step 10, level. Apparently because plaintiff had been the subject of a RIF at his former position in the Air Force, the Army granted plaintiff grade and pay retention at his former grade level of GS–12, step 7. Additionally, the Army granted plaintiff an LQA. In December 1985, the Army informed plaintiff that its previous decision to grant plaintiff retained grade and pay had been erroneous. The Army terminated plaintiff's LQA and informed plaintiff that the Army would seek a return of all overpayments stemming from the improper grant of grade and pay retention and of an LQA.

Plaintiff sought review of this termination of his grade and pay retention benefits at the United States Merit Systems Protection Board (MSPB) and the Office of Personnel Management (OPM), and with the Comptroller General. The MSPB, in an initial decision, concluded that it lacked jurisdiction to consider plaintiff's appeal.[2] OPM and the Comptroller General each addressed the merits of the appeal and held that plaintiff was not entitled to grade and pay retention benefits pursuant to 5 U.S.C. §§ 5362 and 5363. On November 26, 1990, plaintiff filed the instant action seeking, *inter alia*, back pay for grade and pay retention benefits and an LQA.

### II.

The United States, as the sovereign, is immune from suit unless it consents to be sued by waiving its sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The Tucker Act, 28 U.S.C. § 1491, grants this court general subject matter jurisdiction over claims against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." However, with respect to claims based upon acts of Congress or regulations of an executive department, the Tucker Act is only jurisdictional and does not constitute a waiver of sovereign immunity. *Testan*, 424 U.S. at 400, 96 S.Ct. at 954. For such claims, a waiver of sovereign immunity exists and a Claims Court action can lie only where the statute or regulation "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Id.* at 402, 96 S.Ct. at 955, *quoting Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).

Sections 5362 and 5363 appear to mandate the payment of money and thereby to

---

1. Defendant has filed a separate motion for partial summary judgment on plaintiff's claim seeking an LQA. That motion will be the subject of a separate order.

2. The MSPB dismissed the appeal on the ground that although it had jurisdiction to review a reduction in the rate of *basic* pay for a position, it lacked jurisdiction to review an agency's decision to deny an employee's grade or pay retention benefits.

constitute a waiver of sovereign immunity sufficient to support a Claims Court action. Each section defines specific qualifying criteria and then states that federal employees who satisfy these criteria are "entitled" to be placed in a position at a certain level of pay or to receive a certain amount of pay. For example, Section 5362 provides, in pertinent part:

(a) Any employee—

(1) who is placed as a result of reduction-in-force procedures from a position subject to this subchapter to another position which is subject to this subchapter and which is in a lower grade than the previous position, and

(2) who has served for 52 consecutive weeks or more in one or more positions subject to this subchapter at a grade or grades higher than that of the new position,

is *entitled,* to the extent provided in subsection (c) of this section, to have the grade of the position held immediately before such placement be considered to be the retained grade of the employee in any position he holds for the 2–year period beginning on the date of such placement.

\* \* \* \* \* \*

(d) The foregoing provisions of this section shall cease to apply to an employee who—

(1) has a break in service of one workday or more....

(Emphasis added.)[3]

■ Defendant does not assert that these sections are not "money mandating." Rather, defendant bases its contention that this court lacks subject matter jurisdiction primarily on the Supreme Court's decision in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Specifically, defendant asserts that *Fausto* stands for the proposition that judicial review of personnel actions against federal employees is not available unless such review is specifically provided for in the Civil Service Reform Act of 1978 (CSRA). Defendant thus argues that because the CSRA does not explicitly provide for judicial review of agency decisions denying grade and pay retention under Sections 5362 and 5363, this court lacks jurisdiction over plaintiff's claim. Upon review, however, *Fausto* does not articulate nearly as broad a principle as defendant suggests.

The issue presented in *Fausto* was whether a federal employee, classified as a nonpreference eligible employee in the excepted service, could obtain judicial review in the Claims Court of an agency's adverse disciplinary personnel action. Therein, the agency had suspended Mr. Fausto from his job for 30 days for the unauthorized use of a government vehicle. While Chapter 75 of the CSRA specifically provides for both administrative and judicial review when such an adverse action is taken against employees in certain job classifications, Chapter 75 does not mention administrative or judicial review when the same action is taken against nonpreference eligible employees in the excepted service. In assessing the significance of the CSRA's silence with respect to judicial review for such employees, the *Fausto* Court reaffirmed the general principle "that Congress will be presumed to have intended judicial review of agency action to be available unless there is 'persuasive reason' to believe otherwise." *Id.* at 452, 108 S.Ct. at 676, *citing*

---

**3.** Similarly, Section 5363 provides in pertinent part:

(a) Any employee—

(1) who ceases to be entitled to the benefits of section 5362 of this title by reason of the expiration of the 2–year period of coverage provided under this section;

\* \* \* \* \* \*

(3) who is in a position subject to this subchapter and who (but for this section) would be subject to a reduction in pay ...;

is *entitled* to basic pay at a rate equal to (A) the employee's allowable former rate of basic pay, plus (B) 50 percent of the amount of each increase in the maximum rate of basic pay payable for the grade of the employee's position immediately after such reduction in pay if such allowable former rate exceeds such maximum rate for such grade.

(c) The preceding provisions of this section shall cease to apply to an employee who—

(1) has a break in service of one workday or more....

(Emphasis added.)

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967). The Court went on, however, to find in the language, statutory structure, and legislative history of the CSRA the required persuasive evidence that Congress intended to preclude judicial review of Mr. Fausto's back pay claim.

The Supreme Court's analysis in *Fausto* focused on Chapters 23, 43, and 75 of the CSRA, which the Court labeled the "[t]hree main sections of the CSRA govern[ing] personnel action taken against members of the civil service." *Fausto,* 484 U.S. at 445, 108 S.Ct. at 672. The Court noted that "[i]n each of these sections, Congress deals explicitly with the situation of nonpreference members of the excepted service, granting them limited, and in some cases conditional, rights." *Id.* The Court concluded that in this context, Congress' failure in the CSRA to provide for judicial review for such nonpreference employees must have been intentional. The Court explained:

> The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter.... It seems to us evident that the absence of provision for these employees to obtain judicial review is not an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75.

*Id.* at 448–49, 108 S.Ct. at 674.

### III.

Unlike *Fausto,* the language and structure of Chapter 53 and the cited legislative history of the CSRA do not manifest a "considered congressional judgment" that judicial review should not be available when federal agencies deny or revoke grade and pay retention benefits under Sections 5362 and 5363. First, as to language, Sections 5362 and 5363 use the word "entitled" and thereby employ money-mandating terminology which traditionally results in reviewability of agency actions in the Claims Court.

Second, as to the structure of the CSRA, the *Fausto* Court, as noted above, found evidence of Congress's intent to deny judicial review in the provisions of the CSRA that allow judicial review of identical adverse personnel actions taken against federal employees in different classifications. But a similar inference of intent to preclude judicial review is not possible here because Chapter 53 of the CSRA does not explicitly provide judicial review for any employees who are denied grade and pay benefits under Sections 5362 and 5363. (The structure of the CSRA is further discussed in Section IV, *infra.*)

Third, although Sections 5362 and 5363 were enacted as part of the CSRA, the CSRA legislative history upon which the Supreme Court relied in *Fausto* to support the conclusion that judicial review was not available does not support a similar conclusion here. *Fausto* involved a federal agency's adverse disciplinary action against an employee who had allegedly engaged in misconduct. Citing the legislative history of the CSRA, the Supreme Court explained: "Criticism of this 'system' of administrative and judicial review was widespread. The general perception was that 'appeals processes [were] so lengthy and complicated that managers [in the civil service] often avoid[ed] taking disciplinary action' against employees even when it was clearly warranted. S.Rep. No. 95–969, at 9." *Id.* at 445, 108 S.Ct. at 672. The Supreme Court interpreted the CSRA as directed in part at this problem, with Chapter 75 intended to "govern[] adverse action[s] taken against employees for the 'efficiency of the service' which includes action of the type taken [against Mr. Fausto], based on misconduct." *Id.* at 446, 108 S.Ct. at 673. The Court then concluded that in the context of the entire statutory scheme, the exclusion from the definitional sections of Chapter 75

of nonpreference employees in the excepted service displayed a clear congressional intent to deny the excluded employees the judicial review that was provided in Chapter 75 for certain other employees charged with the same misconduct. *Id.* at 447, 108 S.Ct. at 673.

But Sections 5362 and 5363 do not address analogous issues of employee misconduct and agency determinations of the disciplinary response appropriate to promote the "efficiency of the service." Sections 5362 and 5363 are part of Chapter 53 of the CSRA, not Chapter 75 or the other two CSRA chapters upon which the Court focused in *Fausto*. Chapter 53 is entitled "Pay Rates and Systems" and therein Congress, in pertinent part, simply sets the relevant pay rates and conditions for those rates. If an employee satisfies the listed conditions, an agency must grant the corresponding benefits; if the employee does not satisfy the conditions, no entitlement to benefits exists. Therefore, the legislative history upon which the Court relied in *Fausto*, to the effect that the CSRA was intended to encourage warranted agency disciplinary actions by simplifying the appeals process, is not significant here, where plaintiff was not charged with any misconduct.[4]

### IV.

Perhaps defendant's strongest argument that Congress intended to preclude judicial review is based on 5 U.S.C. § 5366, entitled "Appeals." In Section 5366, Congress, *inter alia*, describes the "appeals procedures" for agency decisions affecting grade and pay retention. Defendant contends that Congress intended therein to specify all procedures by which employees can secure review of agency decisions implementing Sections 5362 and 5363.

Section 5366 provides, in pertinent part:

(a)(1) In the case of termination of any benefits available to an employee under this subchapter on the grounds such employee declined a reasonable offer of a position the grade or pay of which was equal to or greater than his retained grade or pay, such termination may be appealed to the Office of Personnel Management under procedures prescribed by the Office.

\* \* \* \* \* \*

(b) For purposes of any appeal procedures (other than those described in Subsection (a) of this section) ...—

(1) any action which is the basis of an individual's entitlement to benefits under this subchapter, and

(2) any termination of any such benefits under this subchapter,

shall not be treated as appealable under such appeals procedures....

Thus, Section 5366(a) specifies one appeal procedure, appeal to OPM, and provides that this procedure is available only where an employee's grade and pay retention benefits have been terminated on the ground that the employee had "declined a reasonable offer." Section 5366(b), in turn, precludes an employee's resort to any other "appeals procedures" for challenging either the termination of grade and pay benefits ((b)(2)) or the action that forms the basis of the employee's entitlement to such benefits ((b)(1)).

Defendant contends that the instant action involves a termination of benefits covered by Section 5366(b)(2) because the Army initially awarded and later ceased paying grade and pay benefits. Assuming that Section 5366(b)(2) applies,[5] the crucial

---

**4.** Defendant has not pointed to any other statements in the CSRA's legislative history that articulate a congressional purpose that this court would further significantly if it held that judicial review is not available for agency decisions implementing Sections 5362 and 5363.

**5.** It is arguable whether the Army's conduct should be classified as a "termination" of benefits within the scope of Section 5366(b)(2). OPM regulations distinguish between loss of eligibility for grade retention and the termination of grade retention. Under 5 C.F.R. § 536.208, grade retention terminates when one of the conditions listed in Section 536.207 occurs "after commencement of the 2–year period of grade retention." Section 536.207 provides that eligibility for grade retention ceases when one of the listed conditions occurs "after the employee receives written notice of the reduction in grade action, but before the commencement of the 2–year period of grade retention." Under 5 U.S.C.

question to resolve is which "appeals procedures" Congress intended to render unavailable when it stated that any agency actions described in (b)(1) and (b)(2) "shall not be treated as appealable under such appeals procedures." There are two possible interpretations. The first interpretation is that Congress was addressing only "appeals procedures" governing administrative appeals, and the second is that Congress also intended to include judicial review. Defendant contends that the second interpretation is correct, but in *Bosco v. United States*, 976 F.2d 710 (Fed.Cir.1992), the Court of Appeals for the Federal Circuit adopted the first interpretation.

*Bosco* involved a back pay claim in which federal employees alleged that their reclassification from the "Prevailing Rate" (PR) system to the General Schedule (GS) violated prevailing rate legislation, 5 U.S.C. §§ 5341–5349. The government contended that even though the prevailing rate legislation was distinct from the CSRA, the CSRA governed the rights of those affected by reclassification. The government's argument proceeded essentially as follows: the challenged reclassification triggered the grade and pay retention benefits contained in Sections 5362 and 5363; the employees' challenge, therefore, falls within Section 5366(b)(1) because it involved an appeal of "[an agency] action [*i.e.*, the reclassification] which is the basis of [the employees'] entitlement to benefits under [Sections 5362 and 5363]"; and the limitation on access to "appeals procedures" in Section 5366(b) therefore applies and should be interpreted to encompass both administrative and judicial review.

In response, the Federal Circuit did not dispute the applicability of Section 5366(b) but, instead, rejected the conclusion that it

should be interpreted to preclude judicial review. First, the court rejected the notion "that the CSRA provides the exclusive review procedures for any type of personnel action the statute covers in any way." *Bosco*, 976 F.2d at 712. Second, and more specifically, the court rejected the contention that the reference to "appeals procedures" in Section 5366(b) was intended to encompass judicial review. Rather, based on an examination of the CSRA, its legislative history, and the case law, the court interpreted "appeals procedures" as encompassing only administrative appeals. The court stated: "The nature and scope of 'appeal procedures' are defined in chapter 77 of title 5, and refer to the [MSPB] appeal process for adverse personnel actions.... Congress intended 'appeal procedures' to be strictly limited to MSPB appeals." *Id.* The Court further explained: "[T]he legislative history and context indicate that in section 5366(b) Congress only expressly dealt with MSPB appeals and was silent with respect to Claims Court or district court consideration of a [Prevailing Rate] claim because it did not intend to affect the latter." *Id.* 976 F.2d at 713.

█ The instant case differs from *Bosco* in that plaintiff's purported entitlement to pay derives from statutory provisions that were enacted as a part of the CSRA while the statutory entitlement in *Bosco*, the prevailing rate legislation, preexisted the CSRA. Hence, it may be argued that even if Congress did not intend Section 5366 to eliminate a preexisting cause of action, Congress still could have intended therein to limit the review of agency decisions regarding entitlements specifically created in the CSRA.[6] But it would be unreasonable to interpret "appeals procedures" as referring only to MSPB appeals for certain em-

---

§ 5362(a), the two-year period of grade retention commences on the date of the post-RIF placement in a position with a lower grade. Herein, the Army has taken the position, in effect, that plaintiff lost eligibility prior to being hired by the Army, *i.e.*, prior to commencement of the two-year period of grade retention. If the Army is correct, an argument can be made that the instant case involves a dispute as to initial eligibility for benefits rather than the "termination" of benefits. In any event, to resolve the

instant motion to dismiss, it is not necessary for this court to determine whether "termination" in Section 5366 refers to both "termination" and "loss of eligibility." As explained *infra*, this court possesses subject matter jurisdiction over plaintiff's claims even if Section 5366 applies.

6. Defendant also relies upon OPM regulations implementing Section 5366 to support its argument as to the unavailability of judicial review. Defendant contends that OPM review was avail-

---

ployee claims and to include judicial review for others.

Moreover, in *Fausto*, the Supreme Court did not conclude that judicial review was unavailable merely because the CSRA covered the pertinent disciplinary actions and did not specifically provide for judicial review. Rather, the Court reaffirmed that a presumption of judicial review exists and that to overcome this presumption, the United States must show a "persuasive reason" to hold otherwise. For all of the reasons set forth above, the language, structure, and cited legislative history of the CSRA simply are not persuasive evidence that Congress's failure specifically to provide for judicial review of decisions implementing Sections 5362 and 5363 was the result of "a considered congressional judgment" that such review should not be available. In the absence of a sound reason to imply that Congress considered the issue of judicial review and decided to preclude such review, the presumption in favor of judicial review of agency action must prevail. *Fausto*, 484 U.S. at 452, 108 S.Ct. at 676.

### Conclusion

For the reasons set forth above, defendant's motion to dismiss is denied.

IT IS SO ORDERED.

able to plaintiff pursuant to Section 5366(a)(1) and that because 5 C.F.R. § 536.302 provides that OPM decisions "shall be considered final decisions," no other review, including judicial review, should be available. But the term "final decisions" in the regulation reasonably can be interpreted to refer to final administrative decisions and not to address the availability of judicial review. In any event, even if OPM intended the regulation to preclude judicial review, OPM lacked the authority to achieve that result. Under *Fausto*, in the absence of a persuasive reason to conclude that Congress intended the contrary, it must be presumed that Congress intended judicial review of agency actions to be available. Where Congress intends judicial review of agency actions to be available, an agency certainly lacks the authority to preclude such review through the enactment of regulations.

Moreover, it is not apparent that OPM review was available herein under Section 5366(a)(1).

As explained above, Section 5366(a)(1) allows OPM review only where benefits are terminated because the employee "declined a reasonable offer." Herein, the offer of employment that accompanied plaintiff's RIF notice apparently did not satisfy the regulatory requirements for a "reasonable offer." *See* 5 C.F.R. §§ 536.206 and 536.207. (For example, plaintiff's RIF notice did not contain the required notification that a failure to accept the offer would result in a loss of grade and pay retention benefits (5 C.F.R. § 536.206(2)). Indeed, the decisions of OPM and the Comptroller General do not suggest that Section 5366(a)(1) applies to the instant case. Rather, they appear to indicate that plaintiff was not entitled to grade and pay benefits because plaintiff had experienced a break in service rather than because plaintiff had "declined a reasonable offer."