Thomas T. TYLER

v.

The UNITED STATES.

No. 353–77.

United States Court of Claims.

June 13, 1979.

Austin P. Frum, Washington, D. C., attorney of record for plaintiff. Dunnells, Duvall, Bennett & Porter, Washington, D. C., of counsel.

John W. Showalter, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, NICHOLS and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

This action is before us on defendant's summary judgment motion to dismiss plaintiff's petition. The issue is plaintiff's entitlement to a living quarters allowance (LQA) which is granted by the Defense Department to persons employed as teachers in overseas schools established for military dependents. We hold that although amended government standardized regulations eliminated LQA's for those hired under circumstances similar to plaintiff's, he is entitled to collect the allowance, as he was hired before the change in the regulations, and "grandfathered" under the section of the amended regulations allowing continued eligibility for previous eligibles who were "continuously employed in a foreign area." We also find that laches do not bar plaintiff's claim, as the government has failed to demonstrate prejudice.

---

* A grandfather clause is a grandperson clause in current newspeak. Counsel in argument adhered to the older form. If insufficiently with it, languagewise, they are not alone. The

In August 1970, plaintiff Tyler and his wife were temporarily residing in England while plaintiff completed his graduate studies at the Institute of American Studies at the University of London. On August 31, 1970, plaintiff was appointed as a teacher in the Department of Defense Overseas Dependents School System at the Brunssum U. S. High School in the Netherlands. His appointment was a temporary one, termed "Exceptional Appointment NTE [Not to Exceed] (June 25, 1971)."

Generally, entitlement to an LQA depends on whether the teacher is recruited in the United States or abroad. Employees recruited in the United States generally are eligible for the LQA. Department of State Standardized Regulations (Government Civilian, Foreign Areas) § 031.11 [hereinafter Standardized Regs.]. Employees recruited outside of the United States are granted LQA's under certain conditions, for example, if the move to a country is required primarily as a condition of employment. Standardized Regs. § 031.12a. The rationale for the distinction is that employees recruited in a foreign area are generally living abroad voluntarily for reasons unrelated to their teaching, and an LQA would be a "bonus" to them, unnecessary to compensate for loss of a home in the United States.

At the time of Tyler's appointment, Standardized Reg. § 031.12d provided that an employee temporarily in a foreign area for travel or study could obtain an LQA, so Tyler received one for the academic year 1970–71. Effective March 1971, the Standardized Regulations were changed, and Standardized Reg. § 031.12d was deleted. A grandfather clause * in the regulations provided that:

An employee who was determined to be eligible to be granted a living quarters allowance under former section 031.12d, last effective on March 25, 1971, and last published in TL:SR–174 dated August 11, 1968, may continue to be eligible for and

grandfather clause has too long and significant a history in our American jurisprudence to masquerade under any other name.

be granted a living quarters allowance while continuously employed in a foreign area and while he or she is otherwise eligible for such allowance. [Standardized Regs. § 031.12.]

On June 25, 1971, Tyler's position was terminated in accord with his original contract. On August 31, 1971, he was reappointed to the same position, and continued to teach in the Brunssum School until 1975. After June 25, 1971, he received no LQA's, the government's position being that due to his short "break in service," he did not fit within the terms of the "grandfather clause" of the Standardized Regulations. In May of 1975 plaintiff was transferred, at his request, to the Alconbury American School in England, where he is still teaching. He alleges that representations were made to him at this time that he would receive an LQA upon his transfer.

Plaintiff made no administrative or judicial claim for an LQA until December 15, 1975, when he filed a claim against the Department of the Army, which was denied on February 17, 1976. He had written to his Congressman about the matter, but received no reply and took no further action. The instant action was filed on June 23, 1977.

Before stating our conclusions about Tyler's claim, we wish to make clear what is *not* decided here. We do not address plaintiff's argument that he is entitled to an LQA by virtue of the statutes specifying pay and allowances for civilian overseas employees. *See* Overseas Teachers Pay Act, 20 U.S.C. § 905 and the Overseas Differential & Allowances Act, 5 U.S.C. § 5921. Plaintiff argues that the regulations promulgated under the latter act (the regulations which deny persons hired abroad an LQA) are invalid as they are inconsistent with the requirements of the Overseas Teachers Pay Act. We leave this and plaintiff's equal protection argument to other cases stated to be pending, where they may be necessary to the decisions.

I

■ We determine that plaintiff is entitled to recover because he was covered by the grandfather clause under the Standardized Regulations as we read them. It is true, as defendant points out, that plaintiff's initial appointment was scheduled to terminate and did terminate on June 25, 1971, and that his new appointment was effective August 31, 1971. We agree with the defendant that neither the regulations nor unauthorized alleged representations of administrative officials made to Tyler mandate conversion of plaintiff's NTE limited appointment status to an indefinite one.

However, we do not read the grandfather clause as technically as the government does. That clause says an employee may be eligible for an LQA as long as he is "continuously employed." Defendant argues that an employee must have no "breaks in service," and that the period from June 25, 1971, to August 31, 1971, was such a break. We disagree. Plaintiff is a schoolteacher; the school year ends in June. Plaintiff was rehired in August for the next school year, and for the two school years after that in Brunssum. He went to teach in England for the 1975–76 school year and teaches there still. There is no indication in the record that any teachers taught during July and August. Some teachers were serving under an indefinite appointment status, and thus, unlike plaintiff, knew in June of 1971 that they would be teaching in September of that year. But the only difference between plaintiff's situation and theirs is that plaintiff had no legitimate expectation or "right" to be rehired in June of 1971. This case is not *Featheringill v. United States,* 217 Ct.Cl. —— (1978), where the plaintiff, a civilian employed as a teacher in an overseas dependents' school, argued that he had a right to have his status converted from a temporary limited term employee to a rehired NTE teacher or an indefinite appointee if he met the standards for satisfactory performance found in defendant's regulations. We held that he had no such right, since the decision to rehire was discretionary. Tyler need not rely on a "right" to be rehired or considered for employment. He was rehired.

Once rehired for the 1971–72 school year, Tyler was "continuously employed" within the general meaning of the term. The fact that his contract with the government was limited to school years of one term does not change this meaning. Persons, teachers, and others, ordinary persons and not jurisconsults reading the regulations would assume that a teacher employed for the 1970–71 school year, rehired for the 1971–72 school year and for subsequent years in the same school, with no break except the summer vacation enjoyed by all teachers, was "continuously employed" in that position. The regulations themselves do not state that to be "continuously employed" one must have possessed a contract in June for the school year beginning that next August. Given that the Standardized Regulations are part of the terms and conditions of the employment agreement between the United States and its civilian overseas employees, we can, by analogy, apply the rule of *contra proferentem* to this case, construing any ambiguities in the Standardized Regulations against the government-drafter. *See State Bank of Albany v. United States,* 530 F.2d 1379, 1383, 209 Ct.Cl. 13, 21 (1976) (construction of Treasury mimeograph); *E. L. Conwell & Co. v. Gutberlet,* 429 F.2d 527 (4th Cir. 1970) (employment contract construed against drafter-employer).

## II

Defendant asserts the affirmative defense of laches, arguing that plaintiff waited five years and ten months after his initial denial of an LQA in August 1971, and two years after denial of an LQA upon his transfer to London, to file suit in this court. Since we have determined that plaintiff is entitled to LQA's under the grandfather clause for the 1971–72 and subsequent school years, the delay from August 31, 1971, is the one at issue.

■ Successful assertion of the defense of laches requires both (1) a lack of reasonable diligence by plaintiff in bringing forth his claim; and (2) resulting prejudice to the defendant. The defendant in this case does not successfully demonstrate prejudice, so the defense fails.

■ Plaintiff's wait of five years and ten months after his claim arose almost invokes this court's six-year statute of limitations. We assume for the purposes of argument here that plaintiff has no suitable excuse for his delay. Defendant has correctly pointed out that the longer the delay the less need there is to search for specific prejudice. *Gersten v. United States,* 364 F.2d 850, 852, 176 Ct.Cl. 633, 636 (1966) (civilian back pay case). But this does not mean a lengthy delay eliminates the requirement that defendant demonstrate some actual or potential prejudice caused by the delay. In *Gersten* itself, the court did not say that laches was an applicable defense where no prejudice was shown; it said first, that no specific prejudice had to be demonstrated, and second, that "[t]o the extent that some particular reason to infer prejudice be needed, it is adequately revealed by the record." 364 F.2d at 852, 176 Ct.Cl. at 636–37. In *Gersten,* the government would have been liable for 8½ years of back pay for plaintiff's decedent's abolished position.

As *Gersten* demonstrates, the prejudice customarily accruing to the government in civilian pay and/or reinstatement cases is the fact that the government must pay a successful plaintiff, and has already paid his replacement, for the performance of only one job. The greater the delay in bringing suit, the greater the double payment. In some cases where the delay is extremely lengthy, the court has found it reasonable to assume that a replacement has been hired and paid. *Brundage v. United States,* 504 F.2d 1382, 1386–87, 205 Ct.Cl. 502, 510 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975) (military pay case); *Bovard v. United States,* 160 Ct.Cl. 619, 622, *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). In addition, prejudice to the government could occur even if there is no replacement chosen for plaintiff, if the government is required to grant back pay but, because of the delay in litigation, had not been able to employ plaintiff's services in some manner. *Brund-*

*age, supra,* 504 F.2d at 1387, 205 Ct.Cl. at 510.

But in this case there was no question of double compensation or back pay for services not rendered the government. Tyler was and is still employed by the government; the funds at stake are pay allowances. Thus, no automatic prejudice accrues to the government due to plaintiff's delay—he would have been paid anyway. *Compare Chappelle v. United States,* 168 Ct.Cl. 362 (1964). That was a suit for back pay due to illegal dismissal, and laches was asserted as a defense. But since Chappelle's position had been eliminated, and since he had relinquished any demand for restoration to his old position or for salary accruing after he was reemployed elsewhere, the court held that laches did not apply as the government could demonstrate no prejudice due to delay.

 In *Frommhagen v. United States,* 573 F.2d 52, 216 Ct.Cl. —— (1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 2019, 60 L.Ed.2d 390 (1979), this court observed that prejudice to the defendant need not always be demonstrated in terms of monetary loss. In *Frommhagen,* the prejudice cited was both loss of key witnesses and evidence needed for trial, and the onus placed on administrative officials whose ability and integrity remained in public debate over an unnecessarily extended period of time. Such factors are not involved in the present case. Plaintiff has not questioned the ability or character of any official. We think defendant's laches argument largely relies on an assumption contrary to fact, namely, that the case, if decided on the merits, would turn on plaintiff's allegations as to what some employees of defendant told him his rights to LQA would be. These allegations we do not even mention in the merits portion of this opinion. *Compare Frommhagen, supra,* and our order in *McGahey v. United States,* 553 F.2d 105, 213 Ct.Cl. 717 (1977). In *McGahey,* the issue was the validity of the military's refusal to change plaintiff's military record to reflect retirement due to medical disability rather than for budgetary reasons. The plaintiff's delay in filing suit clearly caused prejudice as there was a sharp dispute as to the material facts regarding plaintiff's medical condition, facts which could not be "reconstituted" years later.

### CONCLUSION

The grandfather clause of the Standardized Regulations entitles plaintiff to LQA's until the present time, as he has been "continuously employed," and while he remains so continuously employed, he will remain eligible for the allowance. We thus deny defendant's motion for summary judgment and remand the cause to the trial division for further proceedings not inconsistent with this opinion.