**John T. ZERVAS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–3964C.**

United States Court of Federal Claims.

April 1, 1993.

John T. Zervas, pro se.

Kathryn A. Bleecker, with whom were Asst. Atty. Gen., Stuart M. Gerson, David M. Cohen, Director, and Mary Mitchelson,

Deputy Director, Washington, DC, for defendant.

OPINION

ANDEWELT, Judge.

In this civilian pay action, plaintiff, John T. Zervas, appearing *pro se*, seeks grade and pay retention benefits pursuant to 5 U.S.C. §§ 5362 and 5363, and a living quarters allowance (LQA) pursuant to Department of State Standardized Regulations (DOSSR) § 031.12(b). In a prior decision, *Zervas v. United States*, 26 Cl.Ct. 1425 (1992), this court confirmed its subject matter jurisdiction over plaintiff's claims. Presently before the court is defendant's motion for partial summary judgment on plaintiff's LQA claim. For the reasons set forth below, defendant's motion is denied.

I.

The United States Air Force (Air Force) employed plaintiff in West Germany at a GS-12, step 7, level.[1] In July 1984, the Air Force notified plaintiff of a pending reduction in force (RIF) and offered plaintiff a different position at a lower grade with retained pay and grade at plaintiff's former level. Plaintiff declined this offer, and on July 11, 1984, accepted involuntary discontinued service retirement in lieu of a RIF termination. On October 4, 1984, plaintiff was separated from the Air Force.

Prior to his actual separation, in an effort to secure reemployment by the Department of Defense, plaintiff registered with the "Priority Placement Program" (PPP) and placed his name on the "Local Reemployment Priority List" (LRPL). The PPP registers personnel who are scheduled for demotion by a RIF action and who decline a transfer outside the commuting area, and then refers such individuals for placement consideration at Department of Defense activities within the 50 states, the District of Columbia, and Puerto Rico. The LRPL enters the names of certain employees separated by RIF procedures on a list for all competitive positions in the commuting area for which the employees qualify.

In April 1985, approximately six months after plaintiff had been separated from the Air Force, the Department of the Army (Army) hired plaintiff for a position at a lower grade than plaintiff's former position with the Air Force. The Army initially granted plaintiff grade and pay retention at his former Air Force level and an LQA, but later informed plaintiff that the Army's grant of these benefits had been erroneous. Thereafter, the Army reduced plaintiff's grade and salary to the actual grade of plaintiff's Army position, terminated plaintiff's LQA, and informed plaintiff that the Army would seek a refund of all overpayments that had resulted from the Army's erroneous decision to grant plaintiff grade and pay retention benefits and an LQA.

Plaintiff sought review of the Army's decision at the United States Merit Systems Protection Board and the Office of Personnel Management, and with the Comptroller General. Only the Comptroller General addressed the merits of plaintiff's LQA claim. The Comptroller General initially approved a grant of an LQA to plaintiff, but in a subsequent decision remanded the LQA issue to the Air Force and the Army for a new factual determination. On August 28, 1991, the Army held that under the controlling regulations, plaintiff was not eligible for an LQA because plaintiff's entitlement to transportation back to the United States, based on his position with the Air Force, had expired before the Army hired plaintiff.

II.

■ Summary judgment is appropriate only where there is no genuine issue of material fact (*i.e.*, a fact that might affect the outcome of the suit), and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387,

---

**1.** The facts material to resolving defendant's motion for partial summary judgment are not in dispute.

1390 (Fed.Cir.1987). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

DOSSR § 031.12 governs plaintiff's entitlement to an LQA. In *Trifunovich v. United States,* 196 Ct.Cl. 301 (1971), and *Tyler v. United States,* 220 Ct.Cl. 387, 600 F.2d 786 (1979), which are binding on this court, the Court of Claims discussed the standard that a reviewing court should apply when evaluating an agency's refusal to grant benefits under DOSSR § 031.12. In *Trifunovich* (interpreting DOSSR § 031.-12(d), which subsequently was repealed), the Court of Claims held that notwithstanding the use of discretionary wording in DOSSR § 031.12 ("Quarters allowances ... may be granted"), the court should grant a claimant LQA benefits where the claimant meets the specified requirements set forth in the regulation and the agency erroneously denied allowance. The court explained that a particular individual's right to recover an LQA arises not from "a showing of any abuse of discretion, arbitrariness or capriciousness, but from proof of deprivation of statutory and regulatory rights on an invalid basis." *Trifunovich,* 196 Ct.Cl. at 311. In *Tyler* (interpreting the "grandfather" clause of DOSSR § 031.12), the court concluded that if a regulation is "part of the terms and conditions of the employment agreement between the United States and its civilian overseas employees," the court should apply by analogy the rule of *contra proferentem* and thereby construe any ambiguities in the regulations against the government-drafter. *Tyler,* 220 Ct.Cl. at 392, 600 F.2d at 789.

### III.

DOSSR § 031.12 provides, in pertinent part:

Quarters allowances ... may be granted to employees recruited outside the United States, provided that

a. the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributed to his/her employment by the United States Government; and

b. prior to appointment, the employee was recruited in the United States ... by

(1) the United States Government, including its Armed Forces;

(2) a United States firm, organization, or interest;

(3) an international organization in which the United States Government participates; or

(4) a foreign government;

and has been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States ... [.]

Thus, Sections 031.12(a) and (b) concern the entitlement to an LQA of a United States government employee who was recruited outside the United States for his or her job and was recruited inside the United States for a previous job by an employer listed in Section 031.12(b).

In its pending motion for partial summary judgment, defendant contends that it is entitled to summary judgment because plaintiff cannot satisfy three of the pertinent requirements in Sections 031.12(a) and (b), each of which plaintiff must satisfy to qualify for an LQA. First, defendant contends that plaintiff fails to satisfy Section 031.12(a) which focuses on an employee's reasons for residing outside the United States at the pertinent time. Defendant contends that plaintiff fails to qualify thereunder because plaintiff's residence in Germany at the pertinent time cannot be "fairly attributed" to his employment with the United States government. Defendant argues that because plaintiff accepted involuntary discontinued service retirement from the Air Force and did not accept the Air Force's offer of a position at a lower grade, plaintiff's residence in Germany was "fairly attributed" to plaintiff's "freely made decision" to remain in Germany, *i.e.,* that plaintiff resided in Germany "of his own free will" and not as a result of his

employment with the United States government.

But defendant's focus on notions of "free will" and "freely made decision[s]" is misplaced. Unincarcerated United States civilians generally are free to reside wherever they choose, and, therefore, a choice to reside in a particular area almost always can be said to involve an exercise of "free will." But Section 031.12(a) surely was not intended to disqualify every employee exercising such "free will" from receiving an LQA. Rather, by using the term "fairly attributed," Section 031.12(a) looks beyond philosophical notions of free will and requires an employing federal agency to base its LQA decision on an examination of the various factors that actually led a certain individual to choose to reside in a particular area overseas. If, upon examination of all of the relevant facts, the agency concludes that the employee's residence in the particular area at the pertinent time was "fairly attributed" to employment by the United States government, then the employee would satisfy the requirement in Section 031.12(a).

▮ Applying this standard, defendant's contention that plaintiff cannot satisfy the requirements in Section 031.12(a) is deficient. Defendant bases its argument exclusively on two isolated facts—plaintiff was unemployed prior to receiving his job with the Army and plaintiff had refused a job offer from the Air Force. Although these facts are relevant to the required Section 031.12(a) analysis, in and of themselves they do not conclusively prove that plaintiff's residence in Germany was not "fairly attributed to his ... employment by the United States Government." Indeed, in his response to defendant's motion, plaintiff points to several additional facts that arguably support a conclusion that plaintiff's residence in Germany at the pertinent time may have been "fairly attributed" to plaintiff's employment with the United States government. For example, plaintiff asserts that he never gave up his residence in the state of Oregon. This suggests that plaintiff may have intended to return to Oregon immediately after his federal em-

ployment career was completed and was merely waiting at the location of his prior federal employment (Germany) until he could find another federal job. Plaintiff's joining the PPP and placing his name on the LRPL prior to his separation from the Air Force also support a conclusion that plaintiff was merely waiting at his former place of employment until he could find a new job with the federal government. As to plaintiff's refusal to accept the lower-grade job offered by the Air Force, plaintiff suggests that he refused the offer because he was waiting in Germany to resolve an unsatisfactory job performance report in his official record.

As the party moving for summary judgment, defendant bears the burden to show the absence of any dispute as to a material issue of fact. Defendant does not satisfy this burden when it merely cites two of the many possible material facts concerning why plaintiff chose to remain living in Germany after leaving the Air Force. A more complete analysis of all of the factors that affected plaintiff's decision to reside in Germany is necessary to make the "fairly attributed" determination required under Section 031.12(a). Hence, defendant is not entitled to summary judgment on the issue of noncompliance with Section 031.12(a).

### IV.

Next, defendant contends that plaintiff failed to comply with the requirement in Section 031.12(b) that "prior to appointment, the employee was recruited in the United States ... by [one of the four organizations listed in Section 031.12(b) ]." Defendant contends that "prior to appointment" means immediately prior to appointment and that Section 031.12(b) therefore requires that immediately prior to appointment, an employee was serving in the position for which the employee was recruited in the United States by one of the four organizations listed in Section 031.12(b). Defendant then argues that plaintiff is not entitled to an LQA because immediately prior to his appointment with the Army, plaintiff was unemployed and thus, not in

the same position for which he was recruited in the United States.

■ But the wording of Section 031.12(b) does not support defendant's proposed interpretation. The underlying focus of Section 031.12(b) is whether "prior to appointment, the employee was *recruited* in the United States ... by [one of the four organizations listed in Section 031.12(b) ]" (emphasis added), not whether prior to appointment the employee was working in the same position for which he or she was recruited in the United States. Section 031.12(b) certainly does not anticipate that the act of recruiting an employee inside the United States for one job will occur immediately prior to the employee's appointment to a different job. To the contrary, Section 031.12(b) refers to an employee's "substantially continuous employment by [a qualified] employer" who formerly recruited the employee inside the United States. The regulation thereby necessarily anticipates that an employee may work for an employer listed in Section 031.12(b) in the original position for which he or she was hired for a long period of time after recruitment inside the United States, and hence, that there may be a significant period of time between the recruitment inside the United States for one job and the later recruitment outside the United States for a different job.

Although Section 031.12(b) does not require that an employee still be employed by a Section 031.12(b) employer immediately prior to appointment by the United States government outside the United States, defendant is correct that Section 031.12(b) contains a temporal requirement connecting the two distinct jobs. The temporal requirement is that an employee must have been "in substantially continuous employment" by the qualified employer that originally recruited the employee inside the United States when the employee is later appointed to a position by the United States government outside the United States. But to satisfy this requirement, it is not necessary that at the time the United States government appoints the employee outside the United States, the employee

currently be employed by the qualified employer who originally recruited him or her inside the United States. Because the adverb "substantially" is used, uninterrupted employment is not required. It therefore is not necessarily fatal to an LQA claim if there is a brief lapse of time between employment in the position for which the qualified employer originally recruited the employee inside the United States and employment in the position for which the United States government later appointed the employee outside the United States. Because defendant is incorrect in its contention that any period of unemployment between the two jobs precludes an LQA, defendant is not entitled to summary judgment on the ground that plaintiff fails to satisfy the "prior to appointment" requirement in Section 031.12(b).

### V.

■ Finally, defendant contends that plaintiff cannot satisfy the requirement in Section 031.12(b) that prior to plaintiff's appointment with the Army, he was in "substantially continuous employment [with the Air Force] under the conditions which provided for [his] return transportation to the United States." Department of Defense Manual Section 1400.25–M, Chapter 592, Subchapter 2–2.(b)(1), defines "substantially continuous employment" as follows:

> Under the provisions of section 031.-12b, DSSR, former military and civilian members will be considered to have "substantially continuous employment" from the date of separation until the date on which their entitlement to government-paid transportation back to the United States expires.

In turn, the Joint Travel Regulations (JTR), Volume 2, paragraph C4202–2, provides:

> Entitlement [to government-paid transportation] is lost when an employee refuses to accept or use authorization for return transportation for purposes of separation when offered after release from work status in an overseas position. The overseas activity commanding officer may authorize a delay of return trav-

el for a reasonable period of time upon receipt of a written request for such delay from the employee. Normally, a delay of travel not in excess of 90 calendar days will be considered a reasonable period of time for delay of travel.

Defendant contends that because plaintiff did not use his return transportation within the required time after he was separated from the Air Force, plaintiff's entitlement to government-paid transportation had expired and, hence, plaintiff was not in "substantially continuous employment" as defined in the Department of Defense Manual.

In his response to defendant's motion for partial summary judgment on this issue, plaintiff cites a letter he received from an Air Force Civilian Personnel Officer dated December 17, 1984, which was within 90 days of plaintiff's October 4, 1984, separation from the Air Force. The letter provided that "[plaintiff's] transportation agreement granted for separation purposes is valid up to 1 year from the date of separation. LQA may only be granted if [plaintiff is] reemployed in the commuting area within the permitted time frame of 2 years."

Based on this letter, plaintiff argues that his transportation agreement with the Air Force was still in effect when the Army hired him, and, therefore, that plaintiff satisfies the criteria for "substantially continuous employment" contained in Section 1400.25–M. The December 17, 1984, letter from the Air Force, at a minimum, raises an issue of material fact and therefore is sufficient to defeat defendant's motion for partial summary judgment. The JTR permits the Air Force to grant a delay of return travel and the December 17 letter indicates, in effect, that a one-year delay had been granted. Defendant has not demonstrated that a proper one-year delay in fact was not granted and, hence, has not demonstrated that plaintiff was not in "substantially continuous employment" as defined in the Department of Defense Manual.

*Conclusion*

For the reasons set forth above, defendant's motion for partial summary judgment is denied. On or before June 1, 1993, defendant shall file its answer to plaintiff's complaint.

IT IS SO ORDERED.