John T. ZERVAS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 90–3964C.

United States Court of Federal Claims.

Feb. 16, 1994.

John T. Zervas, pro se.

Kathryn A. Bleecker, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and Anthony H. Anikeeff, Asst. Director, Washington, DC, for defendant.

## OPINION

ANDEWELT, Judge.

In this civilian pay action, plaintiff, John T. Zervas, appearing *pro se*, seeks a variety of payments and benefits from the United States, including grade and pay retention benefits under 5 U.S.C. §§ 5362 and 5363, and punitive damages.[1] This action is presently before the court on defendant's motion for partial summary judgment on plaintiff's claim for grade and pay retention, and for dismissal of plaintiff's claim for punitive damages for lack of subject matter jurisdiction. For the reasons set forth below, defendant's motion is granted in both respects.

## I.

The facts relevant to resolving defendant's motion are not in dispute. Plaintiff worked for the United States Air Force (Air Force) at the Rhein–Main Air Base in West Germany in a position at the GS–12, step 7, level. On July 5, 1984, the Air Force notified plaintiff of a pending reduction in force (RIF). The Air Force offered plaintiff continued employment at the same air base but in a different position at the GS–9 level with retained pay and grade at plaintiff's former level. Plaintiff declined this offer, and on

July 11, 1984, accepted involuntary discontinued service retirement in lieu of a RIF termination. On October 4, 1984, plaintiff was separated from the Air Force.

Prior to his separation, in an effort to secure reemployment with the Department of Defense (DOD) in a position acceptable to him, plaintiff registered with the DOD "Priority Placement Program" (PPP) and placed his name on the "Local Reemployment Priority List" (LRPL). The PPP registers DOD personnel who are scheduled for demotion by a RIF action and then refers those individuals for placement consideration at DOD activities within the 50 states, the District of Columbia, and Puerto Rico. The LRPL enters the names of certain employees separated by RIF procedures on a list for all competitive positions in the commuting area for which the employees qualify. Plaintiff registered with the PPP and LRPL for placement consideration in positions at the GS–11 and GS–12 levels only. Just prior to his separation, and again shortly after his separation, the Air Force advised plaintiff that he had "reemployment rights" and was entitled to grade and pay retention if he later reentered the federal service.

In April 1985, approximately six months after plaintiff separated from the Air Force, the Department of the Army (Army) hired plaintiff from a general register of eligible employees in a GS–9 level position in the Darmstadt Military Community. The Army initially granted plaintiff grade and pay retention at his former Air Force level (GS–12) and also a Living Quarters Allowance (LQA). On December 13, 1985, however, the Army informed plaintiff that its grant of these benefits had been erroneous. The Army thereafter reduced plaintiff's grade and salary to the actual grade of plaintiff's Army position (GS–9) and terminated plaintiff's LQA. The Army also informed plaintiff that it would seek a refund of all overpayments that resulted from the Army's erroneous grant of benefits. The Army acknowledged that it had misinformed plaintiff as to his reemployment rights prior to his reinstatement in the

---

1. This court has issued two prior opinions in this action. *Zervas v. United States,* 28 Fed.Cl. 66 (1993); *Zervas v. United States,* 26 Cl.Ct. 1425 (1992).

federal service, and in return offered to endorse any application by plaintiff to return to his retired status. Plaintiff requested to be reinstated as an annuitant but the Office of Personnel Management (OPM) denied his request.

Plaintiff sought review of the Army's actions from the Merit Systems Protection Board (MSPB), OPM, and the Comptroller General. The MSPB concluded that it lacked jurisdiction to address plaintiff's complaint. OPM determined that plaintiff had lost his eligibility for grade and pay retention when he declined the Air Force's offer of continued employment and instead accepted involuntary retirement, because such a separation from the Air Force constituted "a break in service of 1 workday or more." The Comptroller General initially held that plaintiff had been subjected to an "unjustified and unwarranted personnel action" but later reversed that decision and concluded that plaintiff was ineligible for grade and pay retention because he had experienced a break in government service. Plaintiff then filed the instant action seeking, *inter alia*, reinstatement of his grade and pay retention rights, the related back pay for the period during which these rights have been denied him, and punitive damages.

## II.

A federal employee's entitlement to grade and pay retention is covered in 5 U.S.C. §§ 5362 and 5363, respectively. Section 5362 provides that a qualifying employee who is placed in a position at a lower grade than his or her previous position as a result of RIF procedures may retain for a period of two years the grade of the position held immediately before such placement. Section 5363 further entitles such an employee to retain that pay level after expiration of the two-year eligibility period set forth in Section 5362. Sections 5362 and 5363 both provide that any entitlement to grade and pay retention ceases if an employee "has a break in service of one workday or more." [2] The Code of Federal Regulations (CFR), 5 C.F.R. 536 (1984)

sets forth the OPM regulations that implemented Sections 5362 and 5363 at the time in issue herein.

Defendant seeks summary judgment on plaintiff's claim for grade and pay retention benefits on the ground that plaintiff was not employed by the United States between his retirement from the Air Force and his employment with the Army, and thus, plaintiff experienced "a break in service of one workday or more." Plaintiff responds that although he was not employed by the United States during this six-month period, he was registered with the PPP and LRPL and, thus, experienced no break in service.

## III.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Herein, because defendant has demonstrated the absence of any genuine issue of material fact, the only issue before the court is whether, as a matter of law, plaintiff is entitled to grade and pay retention benefits.

■ The criteria for initial eligibility for grade retention are set forth in 5 C.F.R. § 536.103 (1984). Subsection 536.103(a)(1) grants grade retention "to an employee who moves to a position in a covered pay schedule which is lower graded than the position held immediately prior to the demotion ... [a]s a result of reduction-in-force procedures." Plaintiff does not qualify for grade retention thereunder because plaintiff was not employed in his GS–12 Air Force position "immediately prior to" accepting employment with the Army. Rather, plaintiff accepted employment with the Army approximately

---

2. Both sections provide other means for disqualification, including an employee's refusal of a reasonable offer of a position with a grade or rate equal to or higher than the retained grade or rate. Because the GS–9 position the Air Force initially offered plaintiff was not equal to or higher than plaintiff's retained grade (GS–12), this provision does not apply to plaintiff.

six months after his separation from the Air Force.

■ In any event, even assuming plaintiff initially qualified for grade retention under Section 536.103, plaintiff subsequently would have lost such eligibility. Subsection 536.-207(a)(1) provides that an employee who initially qualifies for grade retention under Section 536.103 loses that eligibility if "[t]he employee has a break in service of 1 workday or more." Plaintiff interprets Subsection 536.207(b)(2) to suggest that there is no break in service as long as a "RIFed" employee enrolls in a program providing priority consideration for placement. Plaintiff's interpretation is incorrect.

Subsection 536.207(b) provides:

Eligibility for grade retention as a result of entitlement under § 536.103(b) of this part ceases if any of the following conditions occurs at any time after the employee is informed by management of an impending reorganization or reclassification which will or could result in reduction in grade, but before the commencement of the 2–year period of grade retention:

(1) Any of the conditions listed in paragraph (a) of this section except that an employee's request for placement in a lower graded position, in lieu of displacing an employee at his or her grade under reduction-in-force procedures, is not a declination of a reasonable offer for grade retention purposes; or

(2) The employee fails to enroll in, or to comply with reasonable written requirements established to assure full consideration under, a program providing priority consideration for placement.

Thus, Subsection 536.207(b)(2) relates only to employees eligible for grade retention under Section 536.103(b), *i.e.*, "employees ... reduced in grade as the result of a reorganization or reclassification decision announced by management in writing" and where management, at its option, has offered grade retention rights to the employees. Plaintiff has not offered any evidence to show that he has met these requirements. Indeed, plaintiff appears to rely on the eligibility requirements contained in Subsection 536.103(a),

which relates to RIFs, rather than Subsection 536.103(b). In any event, Subsection 536.103(b) retains the break in service exception. Subsection 536.207(b)(2) represents only one of the various ways in which an employee eligible for grade retention under Subsection 536.103(b) will lose that eligibility. Subsection 536.207(b)(1), by referencing Subsection 536.207(a), sets forth the other ways, one of which is "a break in service of 1 workday or more."

## IV.

■ Next, plaintiff seeks support for his position in the Federal Personnel Manual (FPM), which sets forth additional OPM regulations that implemented 5 U.S.C. §§ 5362 and 5363 at the time in issue. Plaintiff first purports to find support in the following explanation of a "break in service":

**Break in service.** (1) Except as provided in paragraph (2) below, a break in service occurs when an employee separates or is separated from the Federal service. If an employee is detailed outside the Federal service, such as to an international organization, or to a state or local government, no break in service occurs. If an employee is placed in a leave-without-pay status ... no break in service occurs.

(2) If an employee separates, or is separated, from the Federal service and then reemployed on the next workday, no break in service occurs. Also, if an employee separates, or is separated, from the Federal service under conditions which include reemployment or restoration rights, no break in service occurs if the employee exercises those reemployment rights within the time allotted. (Note: When an employee exercises reemployment or restoration rights, the employee's current rate of basic pay, with respect to grade and pay retention, is computed as if he or she had never separated from the Federal service.)

FPM Supp. 990–2, 536–25, Subchapter S5–1b (1981). Plaintiff contends that his registration with the PPP and LRPL conferred upon him "reemployment or restoration rights" for two years following his registration. Because he was reemployed by the DOD within

those two years, plaintiff argues, no break in service occurred.

The phrase "reemployment or restoration rights" is not employed in 5 U.S.C. §§ 5362 and 5363 but is employed in the CFR and corresponding parts of the FPM. Review of the relevant portions of the CFR and FPM indicates that the rights plaintiff received under the PPP and LRPL do not qualify as "reemployment or restoration rights" for purposes of an exception to a break in service.

First, as to restoration rights, 5 C.F.R. 353 (1984) provides restoration rights to employees who temporarily leave their federal positions because either (1) they suffered work-related injuries, or (2) they were engaged in military service under 38 U.S.C. § 2021. Herein, plaintiff has not alleged, nor does the evidence before the court suggest, that either of these two circumstances apply to him.

Next, reemployment rights are the subject of 5 C.F.R. 352 (1984) and FPM Chapter 352, both entitled "Reemployment Rights." The FPM explains the purpose behind granting "reemployment rights" as follows:

> a. **Policy.** It is the policy of the United States Government to utilize its officers and employees in a manner that will enable them to make a maximum contribution to the national interest. The government also seeks to provide officers and employees with a reasonable assurance of protection against employment uncertainties when they are in the career civil service and are willing to undertake special assignments or employment where it is unusually difficult to attract necessary experienced manpower.
>
> b. **Justification.** Provision is made for granting reemployment rights because it is believed that the offer of such rights will be a practical and significant aid in attracting needed personnel. These rights provide an incentive to employees to accept assignments they would not otherwise find attractive by insuring that employees will be able to return to their normal long-range career employment after a reasonable period of time. The security offered in reemployment rights makes it possible for employees to devote themselves wholeheartedly to their special assignments without undue concern for their economic future.

FPM 352–3, Subchapter 101 (1985).

Consistent with this policy, 5 C.F.R. 352 lists the eight work assignments for which federal employees, at the time in issue here, could receive reemployment rights. The eight assignments include, *inter alia*, "Movement Between Executive Agencies During Emergencies," "Detail and Transfer ... to International Organizations," "Service in the Economic Stabilization Program," and "Service Under the Indian Self–Determination Act in Tribal Organizations." For each assignment, the CFR cites a statute or regulation that specifically provides authority to grant reemployment rights to a qualifying employee. Thereunder, qualifying employees have a right under specified circumstances upon completion of certain assignments to return to their former employment at their original grade and pay.

Thus, the phrase "reemployment rights" as used in the FPM is a term of art which refers to the "reasonable assurance of protection against employment uncertainties" that is granted to employees who leave a position at a federal agency to secure a particular qualifying job, service at which job, in effect, has been officially deemed to promote the national interest. "Reemployment rights" does not refer to a general right given to an individual who, like plaintiff, retires from a federal position in lieu of a RIF termination and then later secures a new federal job. This is true even when such an employee registers with programs such as the PPP and LRPL. In this regard, both the PPP and LRPL aid employees in finding positions with the federal government following involuntary separation, and, in particular, the LRPL provides registered employees some significant preferences over certain employees or other applicants for a federal position.[3] But neither the PPP nor the LRPL

---

**3.** For example, FPM 330, Subchapters 2–2(a) and 2–3 (1978), respectively, limit the power of a government agency to fill competitive positions by transfer or new hire and require an agency to

provides any "right" to actual reemployment and employees registered thereunder, therefore, have no "reasonable assurance of protection against employment uncertainties." Hence, the "rights" provided through the PPP and LRPL, while significant, are not "reemployment rights" as that phrase is used in the FPM.

Next, plaintiff cites a portion of the FPM which provides:

> If an employee loses eligibility for grade or pay retention prior to the commencement of the grade or pay retention benefit, that eligibility is lost immediately. If it is terminated after the benefit has begun, it is terminated . . .:
>
>   \*   \*   \*   \*   \*   \*
>
> (2) at the end of the last day of the pay period in which the employee:
>
>   \*   \*   \*   \*   \*   \*
>
> —fails to enroll in a program providing priority consideration for placement.

FPM Supp. 990–2, 536–28, Subchapter S5–2 (1981). Plaintiff contends that he did not "fail to enroll" in such a program. But this provision does not list all of the conditions under which such eligibility is lost. Rather, it merely fixes the time at which eligibility, if lost, actually terminates. As discussed above, failure to enroll in a priority placement program is only one of the various ways in which an employee may lose eligibility for grade and pay retention. Herein, plaintiff lost his eligibility by having "a break in service of one workday or more."

In addition, plaintiff claims entitlement to benefits based upon a DOD manual entitled "DOD Program for Stability of Civilian Em-ployment Policies, Procedures, and Programs Manual" (DOD 1400.20–1–M (1980)). Part I, Chapter 2, Paragraph IX, of that manual provides, in pertinent part:

> IX. *Miscellaneous*
> #### A. *Salary and Pay*
>
> 1. *Highest Previous Rate.* An employee of the DOD, who is separated, or is scheduled for separation by reduction-in-force, or failure to accompany a function, who is placed through the Priority Placement Program, or by reassignment or transfer, or Reemployment Priority List (RPL), will have pay fixed in the new grade at a step rate which preserves, so far as possible, the last earned rate except when such rate is earned while serving under a temporary promotion.

Subparagraph IX(A), however, is not a grade retention provision in that it does not guarantee a level of pay equivalent to that of an employee's former position. Rather, it only potentially raises the step level within the lower grade at which the employee is hired to preserve "as far as possible" the employee's former earned rate. Assuming Subparagraph IX(A) applies here,[4] plaintiff's hiring by the Army could not be in contravention of the requirement therein because plaintiff was hired at step 10 of the GS–9 level, the highest possible step. Hiring plaintiff at the highest step within the GS–9 level necessarily preserves plaintiff's former pay at the GS–12 level "as far as possible."[5]

Hence, under the applicable statute and regulations, plaintiff's registration with the PPP and LRPL does not prevent plaintiff's

---

place a certain class of employees listed under the LRPL in positions held by a different class of employees under specified conditions.

**4.** By its terms, Subparagraph IX(A) applies only where the employee is "placed through the [PPP], or by reassignment or transfer, or [LRPL]." Herein, plaintiff was hired from a general register and not through the PPP or LRPL, and plaintiff had never sought placement in a GS–9 position through the PPP or LRPL. But plaintiff references a DOD memorandum suggesting that DOD may have had a policy of preserving an employee's former pay "as far as possible" where a registered employee finds em-ployment on his or her own initiative rather than through the PPP or LRPL.

**5.** Plaintiff also relies upon subparagraph IX(A)(3), entitled "Pay Retention," which provides that "[a]n employee placed in a lower graded position and who is eligible for pay retention under [OPM, DOD], or military department/Defense agency regulations will be accorded pay retention if such rate is higher than that which can be provided under the 'highest previous rate' rule" discussed in subparagraph IX(A)(1) above. This provision, however, cannot aid plaintiff because plaintiff has not cited any regulation that would so entitle him to pay retention.

approximately six-month retirement from constituting a break in service. Plaintiff, therefore, is not entitled to grade retention under 5 U.S.C. § 5362. Because pay retention is likewise unavailable to an employee who has had a break in service, 5 U.S.C. § 5363(a)(1), plaintiff also is not eligible for benefits under Section 5363.

## V.

 As noted above, the Air Force notified plaintiff both before and shortly after his separation that he had reemployment rights entitling him to grade and pay retention. These misstatements raise serious equitable concerns. The United States would seem to be under a strong moral obligation to provide to its employees accurate information as to the legal ramifications of their retirement decisions. The United States appears to have been remiss herein in providing false information to plaintiff as to his eligibility for grade and pay retention. But a demonstration of inequity is not enough for plaintiff to prevail here. This court simply is without authority to consider such equities when assessing the United States' liability. In *OPM v. Richmond*, 496 U.S. 414, 426, 110 S.Ct. 2465, 2472, 110 L.Ed.2d 387 (1990), the Supreme Court held that a federal employee's reliance upon incorrect legal advice from representatives of the United States cannot create a legal entitlement to the payment of monetary benefits not provided for by statute. Herein, as explained above, the relevant statute and regulations bar an employee from receiving grade and pay retention benefits where the employee had a break in service. Plaintiff has not pointed to any other statute or regulation that entitles him to receive a grade or pay higher than the GS–9, step 10, level granted him by the Army. Hence, defendant, having demonstrated the absence of any genuine issue of material fact, is entitled to judgment as a matter of law on plaintiff's claim for grade and pay retention benefits.

## VI.

 Defendant also seeks dismissal of plaintiff's request for punitive damages. Plaintiff bases his request for such damages on a series of allegedly intentional and improper acts taken against him as an employee of the federal government. Plaintiff characterizes the actions allegedly taken against him as intentional torts, and plaintiff's description of these acts would seem to support such a characterization. This court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491, however, does not extend to torts and it is well established that this court does not possess jurisdiction to entertain a claim against the United States for punitive damages. *See, e.g., Garner v. United States*, 230 Ct.Cl. 941, 943, 1982 WL 25283 (1982) ("the granting of ... punitive damages [is] not within the jurisdiction of this court"); *Vincin v. United States*, 199 Ct.Cl. 762, 765, 468 F.2d 930, 932 (1972). Therefore, defendant's motion to dismiss must also be granted.

### Conclusion

For the reasons set forth above, defendant's motion for partial summary judgment on plaintiff's claim for grade and pay retention benefits with related back pay, and for dismissal of plaintiff's claim for punitive damages is granted. On or before April 4, 1994, the parties shall file a status report, jointly or separately, advising the court as to their intentions with respect to further proceedings in this action.

IT IS SO ORDERED.