John T. **ZERVAS**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 90–3964C.

United States Court of Federal Claims.

June 2, 1999.

John T. Zervas, Everett, Massachusetts, pro se.

Lance J. Lerman, with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director, Washington, D.C., for defendant. Major John Schumacher and Major David Claypool, U.S. Department of the Army, of counsel.

## ORDER

ANDEWELT, Judge.

In this civilian pay action, the sole remaining issue is whether *pro se* plaintiff, John T. Zervas, is entitled to a living quarters allowance (LQA) under Department of State Standardized Regulations (DOSSR) § 031.12. *See Zervas v. United States,* 26 Cl.Ct. 1425 (1992) (*Zervas I*); *Zervas v. United States,* 28 Fed. Cl. 66 (1993) (*Zervas II*); *Zervas v. United States,* 30 Fed.Cl. 443 (1994) (*Zervas III*). This issue is before the court on defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is denied.

I.

The following facts are not in dispute. Plaintiff was born in Greece in 1930, emigrated to the United States in 1951, and became a naturalized citizen in 1956. In 1961, the United States Air Force recruited plaintiff in the United States to serve as a school teacher at Incirlik Air Force Base in Adana, Turkey. Over the next 32 years, plaintiff held positions at various Air Force installations throughout Europe and Libya.

On July 5, 1984, while plaintiff was serving at the Rhein–Main Air Base in West Germany in a position at the GS–12, step 7, level, the Air Force notified plaintiff of a pending reduction in force (RIF). The Air Force offered plaintiff continued employment at the same air base but in a different position at the GS–9 level, with retained grade and pay benefits at plaintiff's former level. Plaintiff declined this offer and on July 11, 1984, accepted involuntary discontinued service retirement in lieu of a RIF termination. On October 4, 1984, plaintiff was separated from the Air Force.

Prior to his separation, in an effort to secure reemployment with the Department of Defense (DOD) in a position acceptable to him, plaintiff registered with the DOD Priority Placement Program (PPP) and placed his name on the Local Reemployment Priority List (LRPL). The PPP registers DOD personnel who are scheduled for demotion by a RIF action and then refers those individuals for placement consideration at DOD activities within the 50 states, the District of Columbia, and Puerto Rico. The LRPL enters the names of certain employees separated by RIF procedures on a list for all competitive positions in the commuting area for which the employees qualify. Plaintiff registered with the PPP and LRPL for placement consideration in positions at the GS–11 and GS–12 levels only. Just prior to his separation, and again shortly after his separation, the Air Force advised plaintiff that he had "reemployment rights" and was entitled to grade and pay retention if he later reentered federal service.

In April 1985, approximately six months after plaintiff separated from the Air Force, the Department of the Army (Army) hired

plaintiff from a general register of eligible employees for a GS–9 level position in the Darmstadt Military Community in Darmstadt, Germany. The Army initially granted plaintiff grade and pay retention at his former Air Force level (GS–12) and also an LQA. On December 13, 1985, however, the Army informed plaintiff that its grant of these benefits had been erroneous. The Army thereafter reduced plaintiff's grade and salary to the actual grade of plaintiff's Army position (GS–9) and terminated plaintiff's LQA. The Army also informed plaintiff that it would seek a refund of all overpayments that resulted from the Army's erroneous grant of benefits. The Army acknowledged that it had misinformed plaintiff as to his reemployment rights prior to his reinstatement in federal service and in return offered to endorse any application by plaintiff to return to his retired status. Plaintiff requested to be reinstated as an annuitant but the Office of Personnel Management (OPM) denied his request.

Plaintiff sought review of the Army's actions from the Merit Systems Protection Board (MSPB), OPM, and the Comptroller General. The MSPB concluded that it lacked jurisdiction to address plaintiff's complaint and the OPM stated that it did not have jurisdiction to regulate or administer employee LQAs. The Comptroller General initially held that plaintiff had been subjected to an "unjustified and unwarranted personnel action" but later remanded the issue of the LQA to both the Army and the Air Force to make a factual determination in accordance with their regulations as to plaintiff's actual residence in order to determine if he was entitled to an LQA. Neither the Army nor the Air Force issued a decision prior to plaintiff filing the instant suit.

Plaintiff filed the instant action on November 26, 1990, seeking, *inter alia,* reinstatement of his grade and pay retention rights, an LQA, and punitive damages. In *Zervas II,* 28 Fed.Cl. 66, this court denied defendant's motion for partial summary judgment on plaintiff's LQA claim, and in *Zervas III,* 30 Fed.Cl. 443, the court granted defendant's motion for partial summary judgment on plaintiff's claim for grade and pay retention

benefits and dismissed plaintiff's claim for punitive damages. After additional discovery, defendant renewed its motion for summary judgment on plaintiff's LQA claim. This court deferred ruling on defendant's motion and remanded the action to the DOD for consideration of how DOSSR § 031.12(a) applies to the facts of this case. Upon receiving the DOD's response, this court ordered defendant to brief the effect of the DOD's response on plaintiff's entitlement to an LQA.

## II.

The pertinent criteria for evaluating plaintiff's eligibility for an LQA is set forth in DOSSR § 031.12, which provides:

Quarters allowances . . . may be granted to employees recruited outside the United States, provided that

a.  the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributed to his/her employment by the United States Government; and

b.  prior to appointment, the employee was recruited in the United States . . . by

(1) the United States Government, including its Armed Forces;

(2) a United States firm, organization, or interest;

(3) an international organization in which the United States Government participates; or

(4) a foreign government;

and has been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States . . .[.]

Defendant argues that plaintiff has failed to satisfy the requirement in subsection (a) because his residence in Germany during his six-month separation was not "fairly attributable" to his employment with the United States government. Rather, defendant argues, plaintiff's residence in Germany was the result of a reasoned and personal decision to remain and reside in Europe. This

court had rejected defendant's argument in *Zervas II* as follows:

> Defendant bases its argument exclusively on two isolated facts—plaintiff was unemployed prior to receiving his job with the Army and plaintiff had refused a job offer from the Air Force. Although these facts are relevant to the required Section 031.12(a) analysis, in and of themselves they do not conclusively prove that plaintiff's residence in Germany was not "fairly attributed to his ... employment by the United States Government." Indeed, in his response to defendant's motion, plaintiff points to several additional facts that arguably support a conclusion that plaintiff's residence in Germany at the pertinent time may have been "fairly attributed" to plaintiff's employment with the United States government. For example, plaintiff asserts that he never gave up his residence in the state of Oregon. This suggests that plaintiff may have intended to return to Oregon immediately after his federal employment career was completed and was merely waiting at the location of his prior federal employment (Germany) until he could find another federal job. Plaintiff's joining the PPP and placing his name on the LRPL prior to his separation from the Air Force also support a conclusion that plaintiff was merely waiting at his former place of employment until he could find a new job with the federal government. As to plaintiff's refusal to accept the lower-grade job offered by the Air Force, plaintiff suggests that he refused the offer because he was waiting in Germany to resolve an unsatisfactory job performance report in his official record.

> As the party moving for summary judgment, defendant bears the burden to show the absence of any dispute as to a material issue of fact. Defendant does not satisfy this burden when it merely cites two of the many possible material facts concerning why plaintiff chose to remain living in Germany after leaving the Air Force. A more complete analysis of all of the factors that affected plaintiff's decision to reside in Germany is necessary to make the "fairly attributed" determination required under Section 031.12(a). Hence, defendant is not entitled to summary judgment on the issue of noncompliance with Section 031.12(a).

*Zervas II*, 28 Fed.Cl. at 69.

In its latest brief, defendant includes additional facts to support a conclusion that plaintiff's decision to remain in Germany after his separation from the Air Force was a personal preference not related to his employment with the United States. But plaintiff also has presented additional facts to support his contrary position. Plaintiff argues, *inter alia*, that at the time of his appointment to an overseas position in 1961, plaintiff had a permanent residence in Portland, Oregon; plaintiff has always participated in United States elections and has never paid taxes in any other country;[1] plaintiff's long absence from the United States first was due to his employment with the Air Force and then was the result of his awaiting reassignment; the majority of plaintiff's relatives live in the United States; and plaintiff always planned to return to the United States after his service with the United States government was completed. Further, plaintiff apparently never established a residence in Germany, never owned a house in Germany, educated his children in United States DOD schools, and never voted or paid taxes in Germany, and his wife never obtained a German work permit.

Summary judgment is warranted where there is no dispute as to any material issue of fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact and can rely upon affidavits to satisfy this requirement. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party satisfies its burden, the burden shifts to the nonmoving party to dem-

---

1. Plaintiff's wife was a part-time employee of Lufthansa Airlines and did not make enough money to file German tax returns. Instead, her income was included in plaintiff's United States tax returns, which were always filed jointly.

onstrate the presence of a genuine issue of fact. *See* RCFC 56(f).

In this case, the determination as to whether plaintiff's residence in Germany was "fairly attributable" to his employment with the United States government requires consideration of numerous pertinent facts, including an evaluation of plaintiff's credibility with respect to his comments as to his reasons for staying in Germany. Defendant has not demonstrated the absence of a dispute as to any material issue of fact concerning whether plaintiff's remaining in Germany was "fairly attributable" to his employment with the United States government and, thus, defendant is not entitled to summary judgment.

### III.

Next, defendant argues that plaintiff has failed to satisfy the "substantially continuous employment" requirement set forth in DOSSR § 031.12(b) because plaintiff's separation from federal service from October 1984 to April 1985 constituted a "break in service" under 5 U.S.C. §§ 5362 and 5363 and implementing regulation, Federal Personnel Manual Supp. 990–2, 536–25, subchapter S5–1b. These statutes and implementing regulation, however, govern entitlement to grade and pay retention and do not control entitlement to LQAs, which is governed by 5 U.S.C. § 5923 and implementing regulation DOSSR § 031.12. DOSSR § 031.12 requires only "substantially continuous employment" and, unlike 5 U.S.C. §§ 5362 and 5363, does not preclude benefits if there is any one-day break in service. Indeed, the DOD made clear that a one-day break in service is not controlling for LQAs when in DOD Civilian Personnel Manual (CPM), Section 1400.25–M, ch. 592, subchapter 2–2(b)(1) (1981), it provided:

> Under the provisions of section 031.12b, DSSR, former military and civilian members will be considered to have "substantially continuous employment" from the date of separation until the date on which their entitlement to government-paid transportation back to the United States expires.

Hence, so long as plaintiff's entitlement to government-paid transportation back to the United States did not expire, plaintiff's break in service was not determinative of his entitlement to an LQA. Plaintiff has presented a letter from Evelyn W. Kidwell, Civilian Personnel Officer, which states: "Your transportation agreement granted for separation purposes is valid up to 1 year from the date of separation." Because plaintiff was reemployed by the federal government six months prior to the expiration of his transportation rights, his employment should be deemed "substantially continuous."

The DOD came to a contrary conclusion in its submission filed in response to this court's remand order. In that order, the court focused exclusively on DOSSR § 031.12(a) and asked the DOD to explain its interpretation of DOSSR § 031.12(a) and to respond to three subsidiary questions related thereto. The DOD's response went beyond subsection (a) and addressed the requirements of subsection (b). The DOD concluded that plaintiff failed to qualify under subsection (b) as follows:

> When Mr. Zervas decided for personal reasons to retire and remain overseas after employment, he lost his transportation entitlement in accordance with DOD travel policy. The loss of transportation entitlement meant future positions with DOD would not meet the eligibility criteria for LQA under 031.12(b) which states in part *"and had been in substantially continuous employment by such employer under conditions which provided for his/her return transportation."* Under these conditions Mr. Zervas did not meet the eligibility criteria for LQA.

The DOD's underlying determination that plaintiff lost his transportation entitlement when he chose to retire is directly contrary to the position the DOD took in the Kidwell letter. In its response to the court's remand order, however, the DOD does not acknowledge the existence of the Kidwell letter, much less explain why the DOD's representations therein should not be controlling. Instead, to support its position that plaintiff lost his transportation entitlement when he chose to retire, the DOD points to its Joint

Travel Regulations (JTR) "Section C4202 paragraphs 1. and 2., dated September 1, 1976."

Section C4202 is entitled "Loss of Travel and Transportation Entitlement," and Paragraph 1 provides: "Entitlement is lost when the employee separates overseas to accept private overseas employment or for the purpose of remaining overseas." Defendant, however, cannot rely upon Paragraph 1 for purposes of summary judgment. First, plaintiff lost his position with the Air Force as the result of a RIF and not as a result of his own determination to separate. Second, plaintiff did not accept, nor has defendant presented any evidence that plaintiff ever sought, private overseas employment. Third, as previously discussed, an issue of material fact exists as to whether plaintiff's purpose in remaining overseas after his separation was based on personal reasons or whether it was to obtain reemployment with the United States government.

As to paragraph 2, DOD cites the following portion:

> Entitlement is lost when an employee refuses to accept or use authorization for return transportation for purposes of separation when offered after release form work status in his overseas positions. Overseas activity commanding officers may authorize delay of return travel for a reasonable period of time upon receipt of a written request for such delay from the employee.

But plaintiff cannot reasonably be said to have refused to accept or use his transportation entitlement. The Kidwell letter provided that plaintiff had one year to take advantage of return transportation, and plaintiff secured an overseas position with the United States government six months prior to the expiration of that one-year period. Hence, plaintiff's right to transportation back to the United States had not expired when the Army hired plaintiff in April 1985 for a GS–9 level position at the Darmstadt Military Community, and under CPM § 1400.25–M, plaintiff's employment must be deemed "substantially continuous."

## IV.

Defendant next contends that plaintiff cannot satisfy the requirements of DOSSR § 031.12 because plaintiff did not exercise any reemployment or restoration rights based upon the PPP. Plaintiff was registered with the PPP at the GS–11 and GS–12 levels, not at the GS–9 level for which the Army eventually hired him because plaintiff had previously rejected an offer from the Air Force at that grade. Defendant argues that because plaintiff was not being "restored" from the PPP, he is not entitled to an LQA.

But neither DOSSR § 031.12 nor any other statute or regulation cited by defendant sets forth the requirement that plaintiff be "restored" to government service based on the PPP. The only regulation cited by defendant that refers to the PPP is Section C4002–3b3 of the JTR. That regulation, however, sets forth the conditions under which employees hired while overseas will be granted a new travel agreement. As described above, plaintiff's entitlement to an LQA under DOSSR § 031.12 and CPM § 1400.25–M, in pertinent part, is based on the fact that his transportation agreement from his prior employment had not yet expired. Plaintiff would not, therefore, seem to require a new travel agreement from his new hire to qualify for an LQA.

In any event, even assuming Section C4002–3b3 applies, plaintiff would appear to satisfy the particular requirement upon which defendant relies. Under Section C4002–3b3, a transportation agreement is available to an employee who meets the following requirements:

> [An employee who has a] bona fide place of actual residence in the United States but outside the geographical locality of the post of duty.... [who is] a former employee of the same or another Federal department or agency separated by reduction in force during the previous 6 months who is on a reemployment priority list, and has been authorized delay in return transportation for the primary purpose of exercising reemployment priority rights.

The pertinent language requires only that plaintiff be on a reemployment priority list and does not require that plaintiff actually be

"restored" from that list. The Comptroller General apparently so interpreted Section C4002–3b3 when he stated:

> Although Mr. Zervas was on discontinued service retirement he remained on a reemployment priority list overseas, was reemployed within approximately 6 months of his separation, and was advised by the Air Force that he had 1 year from his separation date to exercise his return rights to the United States. Therefore, we believe that he would be eligible for negotiation of a renewal travel agreement under the 2 JTR provisions.

*John T. Zervas,* No. B–231061.3, slip op. at 5 (Comp.Gen. Aug. 28, 1990).

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment on plaintiff's claim for LQA benefits is denied. The parties shall attempt to reach a settlement on this issue. If the parties are unable to reach such a settlement, on or before July 2, 1999, the parties shall file a status report, jointly or separately, proposing scheduling for the pretrial proceedings set forth in Appendix G, RCFC, and proposing a date and place for trial.

IT IS SO ORDERED.